**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Albert ESCALANTE,
Defendant-Appellant.**

No. 78–2794.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted
September 7, 1979.
Decided April 29, 1980.
As Modified on Denial of Rehearing
Aug. 27, 1980.

Certiorari Denied Oct. 6, 1980.
See 101 S.Ct. 154.

Samuel G. Jackson, Jr., Los Angeles, Cal., for defendant-appellant.

Daniel J. Gonzales, Los Cruces, N. M., for plaintiff-appellee.

Appeal from the United States District Court for the Central District of California.

Before WRIGHT and WALLACE, Circuit Judges, and HOFFMAN,* District Judge.

* Honorable Walter E. Hoffman, United States District Judge, Eastern District of Virginia, sitting by designation.

WALLACE, Circuit Judge:

Escalante, together with others, was indicted for participation in a smuggling ring which allegedly imported some 300 to 500 kilograms of heroin from Mexico with a wholesale value as high as $12,000,000. While Escalante was charged with membership in both a conspiracy to import and a conspiracy to distribute, he was convicted only of the conspiracy to import heroin in violation of 21 U.S.C. §§ 963, 952(a) and 960(a)(1). He alleges three errors which merit discussion: that the evidence was insufficient to lead to his conviction; that the court committed reversible error when it failed to sever his case from that of his codefendants; and that the court abused its discretion in failing to grant a mistrial subsequent to the improper introduction of certain evidence. We affirm.

I.

In the fall of 1975, codefendant Vila came to Los Angeles looking for a source of supply for his New York heroin distribution operation. He contacted Leeds, who in turn contacted Reyes and Maldonado. In December of 1975, Reyes and Maldonado drove to San Diego to Escalante's residence in search of a large scale source of heroin. Escalante introduced them to codefendant Romero. At that time the four discussed Romero's supplying Vila with the heroin that his operation needed. Reyes and Maldonado agreed to purchase a sample of heroin from Romero, drove to Los Angeles, and obtained the $6,000 purchase price from Vila. They drove back to San Diego the same day, purchased a sample, and returned to Los Angeles. The sample was given to Vila. This was the beginning of a large and extensive heroin business and forms the basis of the importation conspiracy pursuant to which Escalante was convicted.

II.

A. *Sufficiency of the Evidence*

We have no doubt that the evidence was sufficient to establish that the conspiracy to import heroin was proven beyond a reasonable doubt. Escalante argues, however, that the government did not prove beyond a reasonable doubt his connection with the alleged conspiracy. The evidence against Escalante may be fairly summarized as follows:

1. Reyes testified that, in the attempt to obtain a heroin connection for Vila, he and Maldonado met with Romero at Escalante's home.

2. At this meeting, Escalante introduced Romero, saying, "This is my friend. You guys make arrangements in any way you can as to the deals you guys got going."

3. At this meeting, the three (Reyes, Maldonado, and Romero) discussed narcotics in Escalante's presence with Escalante occasionally joining in the discussion.

4. During part of this meeting, all four were in a room where heroin was drying under heat lamps.

5. At this meeting Escalante told Reyes that he made money "running [heroin] across the border," and Romero told Reyes that Escalante would do the same for "the people."

6. A government witness named Miller testified that Escalante was also present later that day when Romero was making arrangements with Reyes and Maldonado to get a heroin sample for "the New York people." At this time, Escalante asked Miller if he had any heroin left over from a transaction that Miller had just consummated. The government argues that this evidence established beyond a reasonable doubt that Escalante knew that a large scale operation was being discussed with Romero, knowingly allowed his home to be used for this purpose, and that, in his conversation with Miller, Escalante attempted to procure a heroin sample for Vila. It also argues that the jury could infer that Escalante was to have a role in the heroin importation and distribution operation that Reyes, Maldonado and Romero were discussing.

In order to be a coconspirator, one need not know all the purposes of and participants in the conspiracy. *United States v. Kearney*, 560 F.2d 1358, 1362 (9th Cir.), *cert. denied*, 434 U.S. 971, 98 S.Ct. 522, 54 L.Ed.2d 460 (1977). It is sufficient if the government proves beyond a reasonable doubt even a slight connection between the defendant and the conspiracy. *United States v. Dunn*, 564 F.2d 348, 356–57 (9th Cir. 1977). Thus the government's proof is adequate to sustain the conviction. We have upheld a conspiracy conviction based on a connection proved by less incriminating evidence than that of this case. *See United States v. Kostoff*, 585 F.2d 378, 380 (9th Cir. 1978). Considering the evidence in the light most favorable to the government, as the prevailing party, *United States v. Young*, 573 F.2d 1137, 1139 (9th Cir. 1978), we conclude that there is sufficient evidence to connect Escalante to the importation conspiracy.[1]

### B. *Credibility of Witnesses*

Additionally, Escalante challenges the sufficiency of the evidence by attacking the credibility of the government witnesses, Miller and Reyes, principally on the basis of their immunity from prosecution. As Escalante concedes, even the uncorroborated testimony of a single accomplice is sufficient by itself to sustain a conviction, if the testimony is not "incredible or unsubstantial on its face." *Darden v. United States*, 405 F.2d 1054, 1056 (9th Cir. 1969). *See also United States v. Valdivia*, 492 F.2d 199, 204 (9th Cir. 1973), *cert. denied*, 416 U.S. 940, 94 S.Ct. 1945, 40 L.Ed.2d 292 (1974); *United States v. Bagby*, 451 F.2d 920, 930 (9th Cir. 1971). He argues, however, that the witnesses' testimony was not believable. This is immaterial; the question is whether the witnesses' testimony was *believed*, not *believable*. *United States v. Valdivia, supra*, 492 F.2d at 204–05.

It may be assumed that the jury was aware of each of the factors that Escalante points to as undermining the witnesses' credibility. Nevertheless, the jury believed the witnesses' testimony, as was their prerogative as jurors. *United States v. Young, supra*, 573 F.2d at 1139 ("it is the jury's exclusive function to weigh the credibility of witnesses, resolve evidentiary conflicts and draw reasonable inferences from proven facts"). We are unable to say that the testimony here was "incredible or unsubstantial on its face" so as to justify limiting the jury's role. Therefore, the testimony of Miller and Reyes was appropriately considered by the jury and is sufficient to sustain the conviction.

### III.

Escalante next contends that the district court abused its discretion in failing to grant his motion to sever brought pursuant to Fed.R.Crim.P. Rule 14. In support of his pretrial motion for severance, Escalante made the following allegations:

1. Although the charged conspiracies extended from September 1975 to November 1977, Escalante was not alleged to have committed any overt act after December 1975.

---

1. The case before us is distinguishable from *United States v. Melchor-Lopez*, 627 F.2d 886 (9th Cir. 1979). In that case, there was not substantial evidence to show that defendants had agreed to join the alleged conspiracy. Each had expressed conditions to being involved in specific drug transactions, which conditions were never met. Moreover, the circumstantial evidence presented by the government failed to prove that the defendants had acted to further the larger conspiracy. Here, on the other hand, there is no question that agreement was reached at the initial December meeting at Escalante's home, as the exchange of the agreed-upon sample occurred that very night. Considering that the conspirators met twice at Escalante's home on the same day that Romero identified Escalante as the one who would transport heroin across the border, and that Escalante apparently sought to obtain from Miller the sample with which to complete the initial transaction, there was substantial circumstantial evidence from which a jury could infer that Escalante was connected to and acted to further an established conspiracy.

2. It was likely that Vila's connection to organized crime and gangland murders would come out at the trial.

3. The injection of organized crime and murder into the trial would be highly prejudicial to Escalante. In opposition to the motion, the government assured the court that it would not attempt to elicit the prejudicial testimony. Although the testimony did come out at trial, it was through no fault of the government.

Rule 14 provides that, at the discretion of the trial judge, a severance may be ordered when it appears that a defendant may be significantly prejudiced by a joint trial with his codefendants. Generally speaking, defendants jointly charged are to be jointly tried. *United States v. Gay*, 567 F.2d 916, 919 (9th Cir.), *cert. denied*, 435 U.S. 999, 98 S.Ct. 1655, 56 L.Ed.2d 90 (1978). This is also the rule in conspiracy cases. *United States v. Kelly*, 569 F.2d 928, 938 (5th Cir.), *cert. denied*, 439 U.S. 829, 99 S.Ct. 105, 58 L.Ed.2d 123 (1978); *see Haggard v. United States*, 369 F.2d 968, 974 n.16 (8th Cir. 1966), *cert. denied*, 386 U.S. 1023, 87 S.Ct. 1379, 18 L.Ed.2d 461 (1967).

The test for determining abuse of discretion in denying severance under Rule 14 is whether a joint trial would be so prejudicial that the trial judge could exercise his discretion in only one way. *United States v. Mills*, 597 F.2d 693, 696 (9th Cir. 1979); *United States v. Adams*, 581 F.2d 193, 198 (9th Cir.), *cert. denied*, 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1978). The ruling of the trial judge will rarely be disturbed on appeal. *United States v. McPartlin*, 595 F.2d 1321, 1333 (7th Cir. 1979); *United States v. Campanale*, 518 F.2d 352, 359 (9th Cir. 1975), *cert. denied*, 423 U.S. 1050, 96 S.Ct. 777, 46 L.Ed.2d 638 (1976).

The party seeking reversal of a decision denying severance under Rule 14 has the burden of proving "clear," "manifest," or "undue" prejudice from the joint trial. *United States v. McDonald*, 576 F.2d 1350, 1355 (9th Cir.), *cert. denied*, 439 U.S. 830, 99 S.Ct. 105, 58 L.Ed.2d 124 (1978); *United States v. Gay, supra*, 567 F.2d at 919. Such a party must show more than that a separate trial would have given him a better chance for acquittal. *United States v. Adams, supra*, 581 F.2d at 198; *United States v. Campanale, supra*, 518 F.2d at 359. He must also show violation of one of his substantive rights by reason of the joint trial: unavailability of full cross-examination, lack of opportunity to present an individual defense, denial of Sixth Amendment confrontation rights, lack of separate counsel among defendants with conflicting interests, or failure properly to instruct the jury on the admissibility of evidence as to each defendant. *See United States v. Camacho*, 528 F.2d 464, 470 (9th Cir.), *cert. denied*, 429 U.S. 995, 96 S.Ct. 2208, 48 L.Ed.2d 819 (1976). In other words, the prejudice must have been of such magnitude that the defendant was denied a fair trial. *United States v. Martinez*, 486 F.2d 15, 22 (5th Cir. 1973); *United States v. Echeles*, 352 F.2d 892, 896 (7th Cir. 1965). Clearly, this is not an easy burden to meet.

The prime consideration in assessing the prejudicial effect of a joint trial is whether the jury can reasonably be expected to compartmentalize the evidence as it relates to separate defendants, in view of its volume and the limited admissibility of some of the evidence. *United States v. Brady*, 579 F.2d 1121, 1128 (9th Cir. 1978), *cert. denied*, 439 U.S. 1074, 99 S.Ct. 849, 59 L.Ed.2d 41 (1979); *United States v. Gaines*, 563 F.2d 1352, 1355 (9th Cir. 1977); *United States v. Campanale, supra*, 518 F.2d at 359. The prejudicial effect of evidence relating to the guilt of codefendants is generally held to be neutralized by careful instruction by the trial judge. *See, e. g., United States v. McDonald, supra*, 576 F.2d at 1356 n.8; *United States v. Kennedy*, 564 F.2d 1329, 1334 (9th Cir. 1977), *cert. denied*, 435 U.S. 944, 98 S.Ct. 1526, 55 L.Ed.2d 541 (1978); *United States v. Martinez*, 429 F.2d 971, 975

(9th Cir. 1970), *cert. denied*, 401 U.S. 915, 91 S.Ct. 894, 27 L.Ed.2d 815 (1971). While the actual effectiveness of limiting instructions in dissipating prejudice has been eloquently attacked, *see Krulewitch v. United States*, 336 U.S. 440, 453, 69 S.Ct. 716, 723, 93 L.Ed. 790 (1949) (Jackson, J., concurring), our court assumes that the jury listened to and followed the trial judge's instructions. *United States v. Sullivan*, 595 F.2d 7, 8–9 (9th Cir.), *cert. denied*, 442 U.S. 933, 99 S.Ct. 2867, 61 L.Ed.2d 302 (1979).

■ The reference to Vila's organized crime connections and his apparent participation in a murder was undoubtedly harmful to Escalante. The trial judge, however, carefully instructed the jury to disregard those factors in determining the guilt or innocence of each of the defendants. Escalante has not shown any evidence or suggested any reason why the jury would not have been able to follow this instruction. He has failed to meet his burden of showing clear or manifest prejudice from the joint trial, and consequently the ruling of the trial judge should be affirmed.

### IV.

Escalante's final contention gives us more of a problem. He argues that highly prejudicial testimony by government witness Miller, which was subsequently stricken, prevented him from receiving a fair trial. Miller was allowed to testify over objection that Escalante smuggled heroin across the border by having it taped to his legs. Subsequent to Escalante's crossing the border, Miller picked him up and drove to Escalante's home where they met with Romero, the owner of the heroin. The heroin was then "cut," to produce greater amounts of less strength, and packaged. This incident, Miller testified, occurred in the same month that the conspiracy was formed. Miller's testimony was allowed into evidence on the representation of the government that it would tend to establish that from this heroin came the sample which was subsequently taken to Los Angeles by Reyes and Maldonado to be delivered to Vila. This activity was alleged in overt acts four and five of the conspiracy count. On cross-examination, however, Miller testified that none of the heroin which was smuggled in this incident was used in the manner represented by the government. In fact, all of it had been transported to San Francisco.

With this new revelation, Escalante once more asserted his objection to admission of the testimony and moved for mistrial. The district judge denied the motion for mistrial, but struck the evidence pertaining to the smuggling incident, struck overt acts four and five from the complaint, and admonished the jury to disregard the evidence stricken. Escalante contends that Miller's testimony was too prejudicial to have been adequately cured by the instruction to the jury and that its erroneous admission denied him a fair trial.

■ It has been widely held that [c]ourts have the power to declare a mistrial "whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. . . . [T]he power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes" . . . . *United States v. Klein*, 582 F.2d 186, 190 (2d Cir. 1978), *cert. denied*, 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979), *quoting United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824). A trial judge properly exercises his discretion in declaring a mistrial when the jury cannot reach an impartial verdict, or a verdict of conviction could be reached, but would almost certainly be reversed on appeal because of a procedural error at trial. *Illinois v. Somerville*, 410 U.S. 458, 464, 93 S.Ct. 1066, 1070, 35 L.Ed.2d 425 (1973). The defendant has the burden of showing abuse of discretion. *Tisnado v. United States*, 547 F.2d 452, 460 (9th Cir. 1976).

■ Generally, when evidence is heard by the jury that is subsequently ruled

inadmissible, or is applicable only to limited defendants or in a limited manner, a cautionary instruction from the judge is sufficient to cure any prejudice to the defendant. *See, e. g., United States v. McDonald, supra*, 576 F.2d at 1356 n.8; *United States v. Kennedy, supra*, 564 F.2d at 1334. This procedure is the preferred alternative to declaring mistrial when a witness makes inappropriate or prejudicial remarks; mistrial is appropriate only where there has been so much prejudice that an instruction is unlikely to cure it. *United States v. Klein*, 546 F.2d 1259, 1262–63 (5th Cir. 1977).

It is unfortunate that this issue is before us. In all probability, had the government inquired of Miller before he testified, the government would have been aware that the heroin taken to Los Angeles was not part of that smuggled by Escalante. The failure to do so resulted in the jury hearing prejudicial testimony which they would not otherwise have heard. Under these circumstances it is incumbent upon us to consider carefully whether the evidence admitted was so prejudicial under the facts of this case that the district court abused its discretion in failing to grant a mistrial.

 Neither the government nor Escalante has cited a case in point. We discovered a somewhat similar factual situation in *United States v. Falley*, 489 F.2d 33 (2d Cir. 1973). There, the district judge allowed the government to display a large quantity of hashish in open court on the promise that it would ultimately be linked to the alleged importation conspiracy. Although the hashish was later found to be unrelated to the conspiracy, the district court allowed it to stay in evidence on the ground that it bolstered the credibility of the government's chief witness. The court then further confused the situation, and further prejudiced the appellants, by granting a co-defendant a limiting instruction to the effect that the admitted hashish was unrelated to that defendant, but denying that same instruction to the appellants. *Id.* at 37–38.

Finding that the drugs produced at trial were only "peripherally related to the proceedings," *id.* at 37, the Second Circuit found that the admission of the evidence so prejudiced the defendants as to require a new trial. *Id.* at 37–38, 42. Although the court focused in part on the refusal of the trial judge to give the requested limiting instruction, it also stressed that such an instruction probably would not have overcome the prejudice created by the admission of the evidence. *Id.* at 38.

Thus, in both *Falley* and the case before us, the government induced the district court to admit prejudicial evidence on a ground the government could not sustain. Similarly, in each case the government may have desired to have the jury consider the evidence, in part, for the purpose of associating the defendants generally with the aura of the criminal activity in which they were allegedly involved. At the same time, however, there are important distinctions between the two cases. Whereas in *Falley* the district court declined to withdraw the evidence, the district court in the case before us struck the evidence as prejudicial. Moreover, the district court in *Falley* enhanced the prejudice caused by admission of the evidence when it refused to provide a reasonable limiting instruction. By contrast, here the district judge not only exercised his discretion in striking the evidence, he also took appropriate steps to cure any prejudice to Escalante by instructing the jury to disregard the stricken testimony. We have already pointed out that it is the exceptional case in which such instructions are found insufficient to cure prejudice.

Equally important, unlike the display of hashish merely to bolster the credibility of a witness, the testimony implicating Escalante in heroin smuggling was more than peripherally related to the proceedings. The event about which Miller testified occurred in the same month the conspiracy was formed. Escalante's intent to join that conspiracy was an issue before the jury. Indeed, Escalante's primary defense argument was that, despite the December meet-

ing at his home, the evidence did not clearly show an intent on his part to join the conspiracy. That Escalante had actually engaged in the illegal importation of heroin at or about the time the conspiracy to do the same was formed, qualifies the evidence as a prior similar act. We have stated that "[e]vidence of a prior similar act is admissible on the issues of a defendant's intent, knowledge, *modus operandi*, preparations and plan, and absence of any mistake in his acts." *United States v. Castro*, 476 F.2d 750, 753 (9th Cir. 1973). *See also Fernandez v. United States*, 329 F.2d 899, 908 (9th Cir.), *cert. denied*, 379 U.S. 832, 85 S.Ct. 62, 13 L.Ed.2d 40 (1964); *United States v. Jones*, 425 F.2d 1048, 1051 (9th Cir.), *cert. denied*, 400 U.S. 823, 91 S.Ct. 44, 27 L.Ed.2d 51 (1970). We conclude under the circumstances of this case that Miller's testimony would have been admissible evidence. In contrast, we are doubtful that the evidence in *Falley* was admissible at all since it represented an apparent attempt to bolster the credibility of a witness that had not yet been impeached.

The record does not reveal the basis for the court's decision to strike the testimony concerning Escalante's prior similar act. Once it became clear that the heroin involved in the December transaction did not link up with the conspiracy, the government apparently did not request that the testimony be admitted under a different theory. In refusing to strike another portion of Miller's testimony, however, the district judge stated that it was the only portion of Miller's testimony relevant enough to be admitted. Even so, we are inclined to agree with the government that in deciding that Miller's testimony about the December prior similar act was to be stricken, the court was ruling in effect that the evidence's probative value was outweighed by its prejudicial effect. *See* Fed.R.Evid. 403. The district judge had previously excluded another portion of Miller's proffered testimony, involving a different prior act of Escalante, on prejudice grounds, while acknowledging its relevance as a prior similar act. This ruling suggests that the district

judge was not inclined to admit accounts of similar acts that did not tie directly to the conspiracy and may explain why the government did not seek admission of Miller's account on this alternative ground. The judge's later ruling as to which portions of Miller's testimony were "relevant" enough to be considered by the jury should be understood in light of this prior ruling. Escalante does not appear to disagree with the government's assertion that undue prejudice, rather than relevance, was the basis for striking the testimony.

The fact that the court was within its wide discretion when it ruled that, despite its probative value, Miller's testimony about the December smuggling was unduly prejudicial, does not change our conclusion that, had the district court admitted the evidence under proper instructions, we would have sustained the admission. When the closeness of this admissibility question is taken into consideration, not only is the prejudice to Escalante less substantial than the prejudice presented in *Falley*, but it also appears that the government may have had a valid reason to think the evidence would be relevant and admissible. Although it is unfortunate that the lack of preparation which apparently led the government to think that Miller's testimony would be admissible as evidence of an overt act of the conspiracy, we do not believe that the government's conduct rises to the level of an independent ground for declaring a mistrial. Considering all the evidence and circumstances, we conclude that Miller's testimony as to Escalante's prior act was not so prejudicial that the district court abused its discretion in denying a mistrial. It follows that the curative instruction to the jury to disregard the evidence was the appropriate action for the district court to take.

AFFIRMED.