UNITED STATES of America,
Plaintiff–Appellee,

v.

Carla STRIFLER and Ronald Wayne Strifler, also known as Ronald Wayne Norris, Defendants–Appellants.

Nos. 87–1078, 87–1081.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 9, 1988.

Decided July 11, 1988.

Natman Schaye, Tucson, Ariz., for defendant-appellant Carla Strifler.

Dave Gerson, Tucson, Ariz., for defendant-appellant Ronald Strifler.

Gary C. Korn, Asst. U.S. Atty., Tucson, Ariz., for plaintiff-appellee.

Before KOELSCH, NOONAN and O'SCANNLAIN, Circuit Judges.

NOONAN, Circuit Judge:

Ronald Strifler and Carla Strifler, husband and wife, appeal their convictions of attempting to manufacture methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1), and § 846 and conspiracy to manufacture and/or distribute methamphetamine in violation of the same statutes.

Their appeals raise two issues: the denial of their request for a *Franks* hearing regarding the affidavit on which the search warrant was based that led to their arrest and conviction; and the amount of *Brady* material given them by the district court from the probation file of a government witness.

### FACTS

On June 16, 1986, Harold W. Davidson II filed a handwritten affidavit with a magistrate seeking a search warrant for the premises known as 22700 West Deal Road, Tucson, Arizona, occupied by a double wide mobile home, two sheds and a travel trailer, with a sign proclaiming, "All trespassers will be eaten."

In his affidavit, Davidson identified himself as a special agent for the Drug Enforcement Agency, who had been so employed for over 15 years, had been the case agent on over 100 investigations and had obtained over 100 search warrants. He stated that he had been conducting an investigation of Franklin Huber Maxwell, Killane [sic] Jo Maxwell, and Halbert L. Fitzsimmons, Jr. since March 11, 1986 and had identified these persons as the purchasers of precursor chemicals and glass reaction vessels commonly used in manufacturing methamphetamine. The purchases had been made between March 11 and March 31, 1986.

Davidson went on to say that on June 16, 1986 a confidential informant had come to his office in Tucson and told him that on June 12 he had observed four persons at 22700 West Deal Road in the process of manufacturing amphetamine. The informant identified the four as Halbert Fitzsimmons, Rhonda Fitzsimmons, Carla Norris (Carla Strifler's maiden name) and her husband Ron. According to the affidavit, the informant added that on two occasions between April 1 and June 12, 1986 he had joined these persons in attempting to make methamphetamine. The informant said that at the location were a five gallon boiling flask, a round bottom boiling flask, two kinds of bubble condensers, rubber tubing, various beakers, and a lockbox containing records from the amphetamine manufacturing. These items were some of the same items that the Drug Enforcement Agency, through its ongoing investigation, had suspected were being used on the premises to manufacture methamphetamine.

On the basis of this affidavit, Raymond T. Terlizzi, United States Magistrate, issued the warrant. Execution of the warrant led to the discovery of laboratory apparatus and records that played a part in the Striflers' convictions.

Agent Davidson did not disclose in his affidavit that "the confidential informant" was actually Frank Maxwell and his wife Kellene or Kelly Maxwell; that the Maxwells had learned that they were under investigation; that both had been guaranteed by the prosecutor that they would not be prosecuted if they provided information; that Kellene Maxwell had been paid for

their information; that Frank Maxwell had a long record of convictions for other drug offenses; and that both Maxwells had quarrelled with the Striflers and the Fitzsimmonses.[1]

Before the trial the defendants discovered a report by another Drug Enforcement Agent, Edward DiScenza, dated June 18, 1986 that related to the debriefing of the Maxwells on June 16. According to this report the Maxwells said that they had been present at three attempts at manufacturing drugs during the month of March 1986. The report did not refer to any attempts or observations by the Maxwells in April, May or June.

The defendants moved to suppress the evidence obtained by the search warrant on the ground that the affidavit in support of the warrant contained false and misleading information; the motion was denied without an evidentiary hearing. At the trial, Kellene Maxwell testified as to how Ron and Carla Strifler persuaded her and her husband to engage in a plan for making and distributing methamphetamine; how they bought equipment to do it; and how they had engaged in "cooks" on the property belonging to Frank Maxwell's sister and brother-in-law, the Fitzsimmons. Halbert Fitzsimmons also testified to the cooks on his premises. Government agents testified to finding the equipment for making drugs on the premises and to finding formulas for manufacturing methamphetamine written in Ron and Carla Strifler's handwriting. Frank Maxwell also testified to his involvement with the Striflers.

By way of impeachment the defense brought out an admission from Kellene Maxwell that the Maxwells had gone to the government because they knew they were under investigation and wanted to get immunity. She further acknowledged that she had been paid between $1,500 and $2,000 for her information. Frank Maxwell also testified that, when he first spoke with the agents, he obtained a promise of limited immunity for himself and his wife. On cross-examination he said that he could

not remember how many felony convictions he had but that he had at least two; that he had used "almost every kind" of illegal drugs that exist; that he had started using heroin in 1974; that his probation had been revoked the previous year for using marijuana; and that he had gone to the DEA because he had been told that the DEA was looking for him in connection with the purchases of methamphetamine manufacturing equipment. His only testimony as to a cook in June was that when he went out to the property he "smelled a cook in progress" and saw his brother-in-law pouring out some chemicals.

## ISSUES

The Striflers contend that the affidavit contained false statements and made reckless omissions of facts. *See Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). In particular they say that the information bearing on the Maxwells' reliability was omitted recklessly. They add that the statement that Ron and Carla were seen making amphetamine on June 12 was false because of Frank Maxwell's testimony at the trial that he did not see the Striflers on June 12. The Striflers further contend that the statements in the affidavit about the informant participating in the manufacturing between April 1 and June 12 was false because Agent DiScenza's report shows that the informant participated only in March. If the affidavit were corrected to state the truth, the Striflers say, probable cause to justify the search would have been lacking because the information would have been stale.

The Striflers also contend that there was information in Frank Maxwell's probation file which should have been released to them under the rule of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

## ANALYSIS

1. *The Affidavit.*

■ The Striflers were not entitled to a pre- or post-trial evidentiary hearing be-

---

1. Before trial, the government appears to have been less than forthcoming in disclosing to the defense the incentives tendered the Maxwells.

cause they failed to make the "substantial preliminary showing" that the asserted misstatements and omissions were material to the magistrate's determination of probable cause. The omission of material bearing on the informants' credibility was not material because the magistrate was provided sufficient circumstances to have a substantial basis for finding probable cause. *Cf. United States v. Angulo–Lopez*, 791 F.2d 1394, 1396 (9th Cir.1986).

Agent Davidson said nothing about the veracity of the source identified as a confidential informant. It would have to be a very naive magistrate who would suppose that a confidential informant would drop in off the street with such detailed evidence and not have an ulterior motive. The magistrate would naturally have assumed that the informant was not a disinterested citizen. While the magistrate was not informed of the informant's probity, the magistrate was given reason to think the informant knew a good deal about what was going on at 22700 West Deal Road.

Accepting the defendants' contention that DiScenza's report was more accurate than Davidson's affidavit and accepting Frank Maxwell's trial testimony as more accurate than Davidson's report of what Frank Maxwell told him, we have statements in the affidavit that need to be corrected. If Frank Maxwell's trial testimony is believed, he only smelled a "cook" on June 12, 1986. If DiScenza's report is accurate the Maxwells participated only in March.

■ With these corrections the affidavit still supports the finding of probable cause. That a person participated in making drugs throughout the month of March and then stopped would not make his information stale in June. It would be reasonable to assume that persons who bought equipment in March and were still at the same place in June would not have disposed of the equipment or the records of their criminal business. *Cf. United States v. Landis*, 726 F.2d 540, 542 (9th Cir.), *cert. denied*, 467 U.S. 1230, 104 S.Ct. 2688, 81 L.Ed.2d 882 (1984). As Maxwell had participated in "cooks" with the others it was not unrea-

sonable for him to interpret the smell of chemicals at the same location as indicative that a "cook" was going on or was just over on June 12, 1986.

Even on the assumption that the defendants are correct and the assumedly inaccurate statements are rewritten, the magistrate had before him the affidavit of an experienced investigator indicating purchases of specific precursors by named individuals whose innocent use of them was controverted by an informant who knew these individuals had been doing "cooks" in March and who claimed to have smelled a "cook" a few days before he came to Davidson. The corrected affidavit would have supported the warrant. The alleged errors were not material. The trial court did not err in denying the motion for a *Franks* evidentiary hearing.

### 2. The Probation File

■ A defendant is entitled to material in a probation file that bears on the credibility of a significant witness in the case. *See Brady v. Maryland*, 373 U.S. at 87, 83 S.Ct. at 1196–97 (1963). The trial court should then review the file in camera and release to the defendant all information of this character. *See Moore v. Kemp*, 809 F.2d 702, 730 (11th Cir.); *cert. denied*, — U.S. ——, 107 S.Ct. 2192, 95 L.Ed.2d 847 (1987). Judge Marquez followed this procedure here and released the information in the file that he found relevant. The Striflers object that he did not release enough *Brady* material but acknowledge that they cannot say what else should have been released because they did not and do not have access to the file.

We ask first what is the standard for reviewing the trial court's ruling as to what to release. The court's ruling is unusual in the sense that, unlike most other rulings, the defendants do not have within their own control means to show whether the trial court may have erred. Only an appellate court, with access to the file, is in a position to say whether the trial court's decision was correct. This characteristic of some *Brady* reviews makes it important for the trial court to indicate on the record what material was released after its *in camera* review. It is equally important for the appellant to indicate in the excerpt of record the information he or she received so that this court, comparing the file with the material received, can make its decision

as to whether all the *Brady* material was released.

██ The trial court deciding what is *Brady* material is not in the same position as a prosecutor responding to a request for *Brady* material. *Cf. United States v. Lehman*, 792 F.2d 899, 901 (9th Cir.), *cert. denied*, 479 U.S. 868, 107 S.Ct. 232, 93 L.Ed.2d 158 (1986). The ruling of the court is a ruling on evidence. The trial court must release what it finds relevant, material and probative as to the witnesses credibility. *See Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). It need not release evidence that is not material. *Cf. United States v. Bagley*, 473 U.S. 667, 682, 685, 105 S.Ct. 3375, 3383, 3385, 87 L.Ed.2d 481 (1985). Evidence that is merely cumulative is not material.

██ We adopt the rule that we will reverse for denial of *Brady* material from a probation file if, on review of the file, we find that the district court committed clear error in failing to release probative, relevant, material information. Frank Maxwell's criminal record was in the file. It was, as another district judge had earlier observed, "a horrible record." Normally, the criminal record of a witness is available to the prosecutor and, as it bears on the witness's credibility, must be turned over to the defendant. The criminal record cannot be made unavailable by being made part of the probation file. Consequently, it was clearly erroneous for the trial court not to make available to the defense Frank Maxwell's entire criminal record. In addition, the probation file contained material which would have permitted the defendants to cross-examine Frank Maxwell further on his and his wife's motives for informing against the Striflers, particularly with regard to the alleged June 12 "cook." The file contains, among other things, probation reports showing a tendency in Maxwell to "overcompensate" for actual or perceived problems; reports of the long-standing financial needs of the Maxwells; and reports of repeated instances of Frank Maxwell's lying to authorities. This information would have provided a basis for impeaching Maxwell especially on the issue of whether he invented the existence of suspicious activities at the Fitzsimmons' ranch on June 12, 1986.

██ As to Count IV of the indictment, Frank Maxwell was a significant witness. Count IV charged a conspiracy lasting until June 16. Only Frank Maxwell provided testimony showing that the conspiracy lasted to that date. Consequently, denying to the defense information bearing on Frank Maxwell's credibility was not harmless. The Striflers' conviction on Count IV must be reversed.

Abundant circumstantial evidence and the testimony of Halbert Fitzsimmons and Kellene Maxwell supported the Striflers' convictions on the other crimes charged. There is not a reasonable probability that, had all the relevant material on Frank Maxwell been made available, the result of the trial on those counts would have been different. *United States v. Bagley*, 473 U.S. at 684, 105 S.Ct. at 3385.

AFFIRMED as to Counts I, II, and III. REVERSED as to Count IV.