12 F.3d 1108
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Richard Donald BENSON, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Rose ELLIS, aka Rose Cecilia Ellis, Defendant-Appellant.
 Nos. 92-10559, 92-10560.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 7, 1993.
Decided Nov. 17, 1993.
 
 Before: FERGUSON, THOMPSON, and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 1. Standing
 
 2
 A defendant must have a "legitimate expectation of privacy" in an area to contest the validity of a search of that area. Rakas v. Illinois, 439 U.S. 128, 149 (1978). Benson had no such expectation as to Rose Ellis's residence on Roxboro. The district court did not err in determining that Benson lacked standing to challenge this search.
 
 
 3
 As the owner and occupant of the Argone residence, however, Benson had standing to challenge that search. Rakas v. Illinois, 439 U.S. at 133-34. Benson also had standing to contest the search of his mother's home on Plainview. A houseguest has a legitimate expectation of privacy in a host's home even if that guest has no property interest in the home. Minnesota v. Olson, 495 U.S. 91, 110 S.Ct. 1684 (1990). The district court found that Benson's mother gave Benson keys to her home on Plainview, that he kept personal possessions there, that he sometimes spent the night there, and that he was free to come and go at will. Under Olson, Benson had a legitimate expectation of privacy in his mother's home, and standing to challenge its search.
 
 2. Probable Cause
 
 4
 We apply a "totality of the circumstances" test to determine whether probable cause existed to justify a search. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317 (1983).
 
 
 5
 Probable cause existed to search the Argone residence. Although evidence that a suspect has committed a crime is not alone enough to warrant a search of that suspect's home, United States v. Ramos, 923 F.2d 1346 (9th Cir.1991), such a search is valid where there exists "reasonable cause to believe that the things listed as the objects of the search are located in the place to be searched." Id. at 1351. Agent Ware stated in his affidavit that Benson was a drug trafficker and the owner of the Argone residence. Agent Ware also stated in the affidavit that drug traffickers usually keep drug transaction records in their homes. These statements could reasonably lead a magistrate to believe that police would find evidence of drug dealing in Benson's Argone residence.
 
 
 6
 Probable cause also existed to search the Plainview residence. Anderson's statements and other evidence indicated that Benson typically conducted his drug deals in Las Vegas hotel rooms. A police dog found evidence of drugs in the hotel room that Benson had just left. Benson flew from Las Vegas to Detroit without luggage, suggesting he intended to stay in Detroit only briefly. He lied to police about the address in Detroit to which he was going. According to the informant, a safe in Benson's mother's home in Detroit held $75,000 in cash as recently as four months earlier.[1] Taken together, this evidence established probable cause for the search of the Plainview residence.
 
 B. Sufficiency of Evidence
 
 7
 In his challenge to the sufficiency of the evidence, Benson argues that no reasonable juror could have believed the testimony of the prosecution's witnesses. The credibility of witnesses, however, is not reviewable on appeal. United States v. Kaufman, 862 F.2d 236, 238 (9th Cir.1988).
 
 
 8
 Benson also contends the evidence was insufficient to establish that he supervised five individuals, or that he derived substantial income from dealing in drugs. We disagree. The government charged and produced evidence that Benson supervised exactly five people. His argument that the government's witnesses were impeached and unbelievable goes to their credibility, a question for the jury to decide. Id. That Benson derived substantial income from drug dealing was established by the evidence of his drug trafficking and the lack of any explanation for having $75,000 in cash in his room at his mother's home.
 
 C. Prosecutorial Vouching
 
 9
 Benson and Ellis both contend that the prosecutor, in his argument to the jury, vouched for the credibility of the government's case.
 
 
 10
 During his argument to the jury the prosecutor stated:
 
 
 11
 But consider another thing, too. When the Defense is arguing that this is all set up, that this is all George Anderson, that these are all witnesses that were brought in and either monkeyed with or toyed with or given suggestive lineups or given testimony and opportunity to remove things. That suggests one thing--that this is a conspiracy that the Government put together not Mr. Benson. And ask yourself: What motives does the Government have to do this?
 
 
 12
 We live in this community, too; we have houses here; we have families here; we have to grow up with this....
 
 
 13
 [Defense counsel:] Your Honor, excuse me, this is improper for him to talk about his involvement in this community. That's totally improper argument.
 
 
 14
 [Court:] I think it's responsive to what has been said, Counsel.
 
 
 15
 [Prosecutor:] You have to look--you know if this was something, if you were looking at a case where maybe you went to war in Panama to drag Noriega back here or something like that, and there were political overtones to it or something like that, you could look at it and you could say, "Oh, the Government's invested all this money. Maybe they have to convict this guy. Maybe they did all this, maybe they have to go get this guy." Where is the motive of the Government to go out and put together a fabricated case against Mr. Benson? Where is the motive of the Government to go out and give people lineups just to finger Mr. Benson? They don't pay anybody any more or less whether Mr. Benson gets convicted or not. For you to believe that kind of a story, you have to believe that these agents who sit at this table, those agents who took the stand and testified, don't care about convicting an innocent man or a correct man or a man who is guilty, and all they care about is putting together a case, and they'll do anything to do it.
 
 
 16
 Trial Transcript, Volume VI, at 103-04.
 
 
 17
 The prosecutor's remarks responded to the thrust of the defense argument that the government's case was founded on a conspiracy to convict the defendants by engaging in improper conduct. The remarks that "we live in this community, too; we have houses here; we have families here; we have to grow up with this", taken in context, refer to the prosecutor's rhetorical question as to what motive the government would have to engage in improper prosecutorial conduct to convict the defendants. Taken in context, the comments do not amount to "vouching."[2]
 
 D. Severance
 
 18
 Ellis failed to reassert her motion to sever at the close of the evidence; as a result, she failed to preserve this argument. United States v. Felix-Gutierrez, 940 F.2d 1200, 1208 (9th Cir.1991). Although she raised the issue in a post-trial motion, that motion was made long after the jury had deliberated and reached a verdict. Her motion did not "accompan[y] the introduction of evidence deemed prejudicial," Felix-Gutierrez, 940 F.2d at 1208, and without more does not demonstrate the "[d]iligent pursuit [that] is the guiding principle" of severance. United States v. Kaplan, 554 F.2d 958, 966 (9th Cir.), cert. denied sub nom. Dolwig v. United States, 434 U.S. 956, 98 S.Ct. 483 (1977).
 
 
 19
 However, even if the severance issue was preserved, the district court did not abuse its discretion in denying Ellis's motion to sever. To be entitled to severance,
 
 
 20
 A party must show more than that a separate trial would have given him a better chance for acquittal. He must also show violation of one of his substantive rights by reason of the joint trial: unavailability of full cross-examination, lack of opportunity to present an individual defense, denial of Sixth Amendment confrontation rights, lack of separate counsel among defendants with conflicting interests, or failure properly to instruct the jury on the admissibility of evidence as to each defendant.
 
 
 21
 United States v. Escalante, 637 F.2d 1197, 1201 (9th Cir.), cert. denied, 449 U.S. 856, 101 S.Ct. 154 (1980). Ellis made no such showing.
 
 
 22
 A great disparity in the amount of evidence introduced against joined defendants will sometimes furnish the grounds for severance, see, e.g., United States v. Donaway, 447 F.2d 940, 943 (9th Cir.1971) (declaring abuse of discretion in denial of severance where only 50 of 2,300 pages of trial transcript were related to appellant and where trial judge was temporarily disabled and replaced by second judge "to whom the dangers of joinder might not have been apparent"); however, "[t]he prejudicial effect of evidence relating to the guilt of codefendants is generally held to be neutralized by careful instruction by the trial judge." United States v. Escalante, 637 F.2d at 1201.
 
 
 23
 Much of the evidence at trial related only to Benson's criminal enterprise charge and not to Ellis's conspiracy charge. The trial judge, however, gave appropriate instructions to the jury before they began their deliberations:
 
 
 24
 A separate crime is charged against one of the Defendants in each count. The charges have been joined for trial. You must consider and decide the case of each Defendant on each crime charged against the Defendant separately. Your verdict on any count as to any particular Defendant should not control your verdict as to any other Defendant, except that in order to find Richard Benson guilty in Count 3, you must find Richard Benson guilty in Count 1.
 
 
 25
 Although the Defendants are being tried together, you must give separate consideration to each Defendant. In doing so you must determine what the evidence in the case shows with respect to each Defendant leaving out consideration of any evidence admitted solely against the other Defendant. The fact that you may find one of the Defendants guilty or not guilty should not control your verdict as to the other Defendant.
 
 
 26
 Trial Transcript, vol. VI, at 134. Any disparity in evidence presented between Benson and Ellis was neutralized by these instructions.
 
 
 27
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The government relies on United States v. Pitts, 6 F.3d 1366 (9th Cir.1993), for the proposition that this information, though four months old, was not stale. In Pitts, the court recognized the tendency of drug traffickers to engage in ongoing criminal endeavors and held that an affidavit containing four month-old information about firearms and drug paraphernalia was not invalid for staleness. In light of evidence in the affidavit that Benson repeatedly engaged in drug trafficking, consistent with Pitts, we conclude the four month-old information about the safe containing a large sum of money was not stale
 
 
 [2]
 We also note that after the defense objected, the prosecutor made no further remarks of the kind that prompted the objection