91 F.3d 156
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Nelson GOMEZ-RODRIGUEZ, Defendant-Appellant.
 No. 95-10168.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 14, 1996.
Decided July 10, 1996.
 
 1
 Before: BEEZER and HAWKINS, Circuit Judges, and ZILLY, District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 Nelson Gomez-Rodriguez appeals his conviction and sentence arising from his involvement in a conspiracy to distribute cocaine. We have jurisdiction under 28 U.S.C. § 1291 and we affirm.
 
 BACKGROUND
 
 4
 In June 1993, an FBI investigation of a cocaine distribution scheme in Las Vegas, Nevada, culminated in the arrests of Nelson Gomez-Rodriguez and twelve others. Gomez-Rodriguez was indicted for conspiracy to distribute and possession with intent to distribute controlled substances; four counts of possession with intent to distribute cocaine and cocaine base; four counts of use of a communication facility for commission of a felony cocaine offense; and aiding and abetting. Gomez-Rodriguez was convicted on all counts following a jury trial and was sentenced to 188 months in prison.
 
 DISCUSSION
 
 5
 I. Refusal to Sever Trial or to Declare a Mistrial
 
 
 6
 Gomez-Rodriguez moved prior to trial to sever his trial from that of co-defendant Angela Gomez, on the ground that the jury would be unable to compartmentalize the evidence against the two defendants. This motion was denied. Gomez-Rodriguez again moved to sever, or for a mistrial, when prosecution witness Richard Lewis remarked during cross-examination that he had been acquainted with Angela Gomez in the early 1980s, although the trial judge had ruled that evidence of that prior relationship was not admissible because of the possibility of prejudice to Angela Gomez. The court instructed the jury to disregard the comment. The court had already instructed the jury to consider the evidence concerning Angela Gomez separately from evidence of the conspiracy in which Gomez-Rodriguez was involved. At the conclusion of trial, the court instructed the jury that: "Although the defendants are being tried together, you must give separate consideration to each defendant. In doing so you must determine what the evidence in the case shows with respect to each defendant, leaving out of consideration any evidence admitted solely against some other defendant."
 
 
 7
 We review a refusal to sever trial for abuse of discretion. United States v. Escalante, 637 F.2d 1197, 1201 (9th Cir.), cert. denied, 449 U.S. 856 (1980). Severance is required only when there is "clear," "manifest" or "undue" prejudice that violates one of the defendant's substantive rights and effectively denies him a fair trial, Escalante, 637 F.2d at 1201, thus outweighing "the dominant concern of judicial economy," United States v. Monks, 774 F.2d 945, 948 (9th Cir.1985). Careful jury instructions are generally deemed to neutralize any prejudice arising from the potential spillover effect of evidence relating to a codefendant's guilt. United States v. Douglass, 780 F.2d 1472, 1477 (9th Cir.1986); Monks, 774 F.2d at 949. The mere fact that the defendant would have had a greater chance of acquittal at a separate trial does not show that the trial court abused its discretion in refusing to sever the trial.
 
 
 8
 Gomez-Rodriguez has not met his burden to show prejudice. There is no reason to believe that the jury attributed Angela-Gomez's prior relationship with Richard Lewis to Gomez-Rodriguez. The trial court instructed the jury to compartmentalize the evidence, and we assume that "the jury listened to and followed the trial judge's instructions." Escalante, 637 F.2d at 1202. The trial lasted only six days and the evidence in question was not complex, so it would not be difficult for the jury to compartmentalize the evidence. We conclude that the court did not abuse its discretion by refusing to sever the trial.
 
 
 9
 We review the refusal to declare a mistrial for abuse of discretion. Escalante, 637 F.2d at 1202. When a jury has heard inadmissible or improper testimony, a limiting instruction is generally sufficient to cure any prejudice to the defendant and to avoid a mistrial. United States v. Arias-Villanueva, 998 F.2d 1491, 1502 (9th Cir.), cert. denied, 114 S.Ct. 573 (1993). "[M]istrial is appropriate only where there has been so much prejudice that an instruction is unlikely to cure it." Escalante, 637 F.2d at 1203. A limiting instruction may be deemed insufficient only if it is "more probable than not" that the inadmissible testimony affected the verdict. Arias-Villanueva, 998 F.2d at 1502.
 
 
 10
 The court did not abuse its discretion by refusing to declare a mistrial. The court gave an adequate limiting instruction, and we assume that the jury followed it. Even if there were some spillover effect, the physical and testimonial evidence against Gomez-Rodriguez provides sufficient support for the jury's verdict to defeat the argument that the conviction was based upon the inadmissible testimony.
 
 
 11
 II. Refusal to Release Presentence Reports of Lewis and Hawkins
 
 
 12
 When a presentence report ("PSR") is not in evidence, we review a district court's decision not to release the PSR to the defendant for abuse of discretion. United States v. Anzalone, 886 F.2d 229, 233 (9th Cir.1989); United States v. Chavez-Vernaza, 844 F.2d 1368, 1375 (9th Cir.1988), cert. denied, 114 S.Ct. 1324 (1994).[1] In Chavez-Vernaza, this court held that the district court had not abused its discretion by conducting an in camera review of the PSR to see if it contained discoverable Brady material. 844 F.2d at 1375. And in Anzalone, this court found that a defendant was not prejudiced by the district court's refusal to release a key witness's PSR because the defendant had access to the witness's criminal record "and ample other information with which to impeach him." 886 F.2d at 233.
 
 
 13
 The court below conducted an in camera review of the PSRs and determined that there was no discoverable material that was not cumulative of information already in the defendant's possession. Lewis's prior conviction and incarceration for a narcotics offense, and both witnesses' favorable plea agreements, were brought out at trial. Gomez-Rodriguez's reliance on United States v. Strifler, 851 F.2d 1197 (9th Cir.1988), is misplaced. This case does not involve the shielding of relevant information or the absence of corroborating evidence to support the conviction that marked Strifler. We therefore find that the court did not abuse its discretion by refusing to release the PSRs.
 
 III. Refusal to Admit Inconsistent Statement
 
 14
 We review evidentiary rulings for abuse of discretion. United States v. Emmert, 829 F.2d 805, 808 (9th Cir.1987). The trial court has broad discretion in determining whether to admit extrinsic evidence to impeach a witness's credibility, especially when it concerns a collateral matter. United States v. Chu, 5 F.3d 1244, 1249 (9th Cir.1993), cert. denied, 114 S.Ct. 1549 (1994). Material is "collateral" if it could not be introduced "for any purpose independently of the contradiction." United States v. Higa, 55 F.3d 448, 452 (9th Cir.1995) (quoting 3A Wigmore on Evidence § 1003, at 961 (1994)).
 
 
 15
 The evidence that Gomez-Rodriguez sought to introduce was collateral. The amount of cocaine purchased by Marvie Harris, who neither testified nor stood trial, was not relevant to any issue before the court. Further, Lewis had not testified about this matter at trial, so the letter did not contradict any statement Lewis had made on the stand. The court's ruling thus did not interfere with Gomez-Rodriguez's right to cross-examine the witness. We find that the court did not abuse its discretion in refusing to admit this evidence.
 
 IV. Adequacy of Jury Instructions
 
 16
 Gomez-Rodriguez raises two issues with respect to the jury instructions. He argues that the court failed to instruct the jury on his theory of the case, which is that he merely purchased cocaine for personal use from Lewis and did not sell it. And, he argues that the instruction should have incorporated additional language.[2] Contrary to the assertions of both parties, there is no conflict in this Circuit regarding the applicable standard of review. United States v. Duran, 59 F.3d 938 (9th Cir.), cert. denied, 116 S.Ct. 535 (1995). This court reviews de novo the question of whether the instructions adequately covered the defendant's theory of the case. Id. Once it has determined that the instructions sufficiently describe the elements of the offense, this court reviews "their precise formulation for an abuse of discretion." United States v. Woodley, 9 F.3d 774 (9th Cir.1993).
 
 
 17
 The purpose of jury instructions is to "provide[ ] the jury with adequate guidance to consider evidence relating to the defense." United States v. Kaplan, 554 F.2d 958, 969 (9th Cir.), cert. denied, 434 U.S. 956 (1977). The instructions must provide the jury with the definitions and rules necessary to understand the defense theory; they need not reiterate or emphasize the defense theory. United States v. Dees, 34 F.3d 838, 842 (9th Cir.1994).
 
 
 18
 The court instructed the jury that the government was required to prove beyond a reasonable doubt that the defendant "wilfully participated in the unlawful plan with the intent to advance or further some object or purpose of the conspiracy." The instructions defined wilfulness and described the mutual understanding and illegal purpose that are necessary to show a conspiracy. The court instructed the jury that mere association with a member of the conspiracy was not sufficient to show that the defendant participated in the conspiracy, and that "[t]he mere relationship of a buyer and seller of drugs does not alone establish a conspiracy between them for the possession of the drugs with the intent to distribute." The instructions were neutral with respect to who was the buyer and who the seller. We find that the instructions adequately conveyed the defendant's theory of the case.
 
 
 19
 Next, the formulation adopted by the court was adequate. A court need not use the precise language proposed by the defendant. United States v. Powell, 955 F.2d 1206, 1210 (9th Cir.1991). The defendant's proposed language from United States v. Lennick, 18 F.3d 814, 819 n. 5 (9th Cir.), cert. denied, 115 S.Ct. 162 (1994), would have expanded upon the evidence necessary to show a conspiracy, but would not have added any new rules or concepts to the instructions as given. We find that the court did not abuse its discretion in formulating the jury instructions.
 
 V. Determination of Base Offense Level
 
 20
 We review factual findings in the sentencing phase for clear error. United States v. Fuentes-Mendoza, 56 F.3d 1113, 1116-17 (9th Cir.), cert. denied, 116 S.Ct. 326 (1995). The government bears the burden of proving, by a preponderance of the evidence, the facts necessary to compute the base offense level under U.S.S.G. § 2D1.1 (1993). United States v. Navarro, 979 F.2d 786, 788 (9th Cir.1992). In determining the quantity of narcotics involved for the purpose of computing the base offense level, the court may adopt the factual findings set forth in the PSR only if sufficient evidence supports them; it may not adopt purely conclusory statements. Navarro, 979 F.2d at 789.
 
 
 21
 Although the court agreed with the PSR in attributing five to fifteen kilograms of cocaine to Gomez-Rodriguez, it did not rely on the PSR for its conclusion. Rather, the court calculated this amount based on the duration of the conspiracy, from October 1992 to June 1993, with a dry spell of no deliveries in March 1993, and Lewis's testimony that he purchased alternately from Angela Gomez and Gomez-Rodriguez in amounts of roughly one kilogram every week to ten days.
 
 
 22
 Contrary to Gomez-Rodriguez's assertion, the court's conclusion did not conflict with the results of physical and wiretap surveillance, which demonstrated that Gomez-Rodriguez delivered a total of four and a half kilograms of cocaine to Lewis. If anything, the fact that surveillance commenced in the spring of 1993 revealed such a quantity supports the court's conclusion that Gomez-Rodriguez sold between five and fifteen kilograms over the length of the conspiracy.
 
 
 23
 Finally, neither the Sentencing Guidelines nor the law of this Circuit prohibits a court from relying in part on testimony at trial in calculating the quantity of drugs involved. We therefore find that the court did not clearly err in calculating the quantity of cocaine for the purpose of determining the base offense level.
 
 VI. Upward Adjustment for Role in Offense
 
 24
 The court found that Gomez-Rodriguez was a "leader or organizer" of the conspiracy and adjusted his offense level upward four levels, pursuant to U.S.S.G. § 3B1.1(a) (1993). A defendant's role in the offense is a question of fact that we review for clear error. United States v. Mares-Molina, 913 F.2d 770, 773 (9th Cir.1990). This standard requires a "definite and firm conviction that a mistake has been committed" by the trial judge. Exxon v. Sofec, Inc., 54 F.3d 570, 576 (9th Cir.1995) (quoting Concrete Pipe & Prod. of Cal., Inc. v. Construction Laborers Pension Trust for So. Cal., 508 U.S. 602, 113 S.Ct. 2264, 124 L.Ed.2d 539, 564 (1993)), aff'd 116 S.Ct. 1813 (1996).
 
 
 25
 The Guidelines provide for an upward adjustment of four levels where "the defendant was an organizer or leader of a criminal activity that involved five or more persons or was otherwise extensive." U.S.S.G. § 3B1.1(a) (1993).[3] The government bears the burden of proving, by a preponderance of the evidence, facts that support an upward adjustment. United States v. Wilson, 900 F.2d 1350, 1354 (9th Cir.1990); see U.S.S.G. § 3B1.1, Application Note 4 (1993) (listing factors that may indicate leadership).
 
 
 26
 Gomez-Rodriguez periodically sold cocaine to Lewis, who then "cooked" the cocaine to convert it to crack and sold it through a distribution network. The court found that Gomez-Rodriguez controlled at least one other member of the conspiracy, Lewis, through his control over procurement and quality control of the drugs. The court noted that the conspiracy was "extensive," encompassing Lewis's twenty-plus distributors. Id. The court relied in part on United States v. Avila, 905 F.2d 295 (9th Cir.1990), in which we held that a drug dealer who sold narcotics in large quantities, negotiated the price of his product, and had multiple sources, was a leader or organizer under the Guidelines. Avila, 905 F.2d at 299.
 
 
 27
 The factual similarity between this case and Avila precludes finding that the trial judge clearly erred. See also United States v. Varela, 993 F.2d 686 (9th Cir.) (affirming finding that drug dealer was a leader because he coordinated deals and acted as a middleman with respect to large quantities of drugs and firearms), cert. denied, 114 S.Ct. 232 (1993). Mares-Molina, in which we held that control of a business or of tangible things is not leadership of a conspiracy, does not compel a contrary conclusion. Mares-Molina, 913 F.2d at 773. In Mares-Molina, the defendant leased a warehouse where narcotics were stored. There was no evidence that he took part in the sale or handling of the drugs. Mares-Molina therefore does not control where, as here, the defendant was the primary supplier of drugs to the conspiracy. We therefore cannot say that the court clearly erred in finding Gomez-Rodriguez to be a leader or organizer of the conspiracy.
 
 
 28
 VII. Refusal to Adjust Downward for Role in Offense
 
 
 29
 The court refused to find that Gomez-Rodriguez was a "minor participant" in the conspiracy, and thus refused to adjust his offense level downward. As above, we review the court's finding as to the defendant's role in the offense for clear error. United States v. Liu, 941 F.2d 844, 848 (9th Cir.1991). The Guidelines permit a downward adjustment of two levels "[i]f the defendant was a minor participant in any criminal activity." U.S.S.G. § 3B1.2(b) (1993). The Application Notes describe a minor participant as one "who is less culpable than most other participants." U.S.S.G. § 3B1.2 comm. 4 (1993). The defendant has the burden of proving, by a preponderance of the evidence, facts warranting a downward adjustment under this section. United States v. Howard, 894 F.2d 1085, 1090 (9th Cir.1990).
 
 
 30
 Gomez-Rodriguez presents no evidence supporting a downward adjustment. He supplied between five and fifteen kilograms of cocaine for distribution. This court has stated that "the possession of a substantial amount of narcotics is grounds for refusing to grant a sentence reduction," and as little as a single kilogram of cocaine may qualify as a "substantial" amount. Liu, 941 F.2d at 848. We find that the court did not clearly err by denying Gomez-Rodriguez's request for a downward adjustment.
 
 
 31
 We conclude that none of the issues addressed in this disposition provides a ground for reversing the conviction or vacating the sentence.
 
 
 32
 AFFIRMED.
 
 
 
 *
 The Honorable Thomas S. Zilly, United States District Judge for the Western District of Washington, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The clear error standard used in United States v. Strifler, 851 F.2d 1197, 1202 (9th Cir.1988), cert. denied, 489 U.S. 1032 (1989), does not apply here. In Strifler, the court had the PSR before it and thus was reviewing the accuracy of the district court's factual conclusion that it was not discoverable under Brady
 
 
 [2]
 In his reply brief, Gomez-Rodriguez seems to raise a third issue, that there was insufficient evidence to justify instructing the jury on conspiracy because all of the physical evidence found at his home was consistent with personal use. This argument was not properly raised, but we address it briefly here. The sufficiency of evidence to support a jury instruction is reviewed de novo. United States v. Anguiano, 873 F.2d 1314, 1317 (9th Cir.), cert. denied, 493 U.S. 969 (1989). The jury heard extensive testimony from Lewis, Hawkins, and FBI agents that Gomez-Rodriguez sold cocaine for the purpose of distribution. It was for the jury to decide whether that testimony was credible. The court did not err by instructing on conspiracy
 
 
 [3]
 Contrary to Gomez-Rodriguez's reading of the Guidelines, the defendant need not control five or more individuals. Rather, the defendant must control at least one individual in a conspiracy that includes five or more individuals or is "otherwise extensive." U.S.S.G. § 3B1.1(a) (1993); United States v. Barnes, 993 F.2d 680, 685 (9th Cir.1993), cert. denied, 115 S.Ct. 96 (1994). In addition, the fact that Lewis was a leader of the conspiracy does not preclude a finding that Gomez-Rodriguez also was a leader. There may "be more than one person who qualifies as a leader or organizer." U.S.S.G. § 3B1.1 comm. 4 (1993); see also United States v. Alonso, 48 F.3d 1536, 1545 (9th Cir.1995) (stating that leadership is not confined to "the participant who was most in control")