UNITED STATES of America,
Plaintiff-Appellee,

v.

Charles Lee DOUGLASS and James Andrew Babb, Defendants-Appellants.

Nos. 85–1028, 85–1032.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 6, 1985.

Decided Jan. 21, 1986.

Susan A. Ehrlich, James T. Lacey, Asst. U.S. Attys., Phoenix, Ariz., for plaintiff-appellee.

Brice E. Buehler, P.C., Phoenix, Ariz., for defendants-appellants.

Before BROWNING, SNEED and HUG, Circuit Judges.

SNEED, Circuit Judge:

The appellants, Charles Lee Douglass and James Andrew Babb, appeal from their convictions for a number of criminal offences stemming from their alleged participation in a drug conspiracy on December 5 and 6, 1981.

## I.

### FACTS AND PROCEEDINGS BELOW

James A. "Jay" Miller headed a narcotics ring that engaged in smuggling marijuana from 1976 until Miller's arrest in October 1982. The pattern of the operation was well established. Miller and Lee Waggoner, a trained pilot, owned a ranch located about 45 miles west of Wickenburg, Arizona. The ranch was equipped with an airstrip and a hangar/barn that housed a Piper Aztec twin-engine aircraft.

To pick up a load of marijuana, Waggoner early in the morning would fly a plane about 1000 miles south into Mexico, load the marijuana (approximately 500 pounds per trip) and return to Arizona that night. Back in Arizona, Miller would direct the activities of the "ground crew," whose duties were to clear the airstrip, set up landing lights, operate ground-to-air walkie-talkies to warn the plane not to land if necessary, and act as "spotters" of unidentified cars and aircraft approaching the area. In addition, crew members manned a refueling stop at an abandoned mine strip just south of the United States border so that, if there were trouble in the United States, Waggoner could obtain fuel to return to the base in Mexico.

Miller and Waggoner planned a marijuana run for December 6, 1981. Among their accomplices were appellants Babb and Douglass—long-time friends of Miller—as well as Roy Cooper, Larry Whigham, Tom Hodge, Bill Ream, and Steve Branagan. Whigham was Waggoner's co-pilot for the trip. Babb and Cooper picked up aviation fuel and flashlights, drove to an airstrip 20

miles south of Florence, Arizona, cleared the strip, and set up the lights. Ream manned the walkie-talkie, while Branagan acted as the spotter. Douglass and Hodge drove to the abandoned mine in Mexico to stand watch in case an emergency fuel stop proved necessary.

This particular trip ended in disaster. While returning from Mexico on the evening of December 6, Waggoner and Whigham crashed their plane into a power line stanchion and were killed. Investigation of the crash site, which was located approximately 50 miles north of the Mexican border, uncovered 500 pounds of marijuana packaged in loose bulk (having a street value of roughly $225,000), a submachine gun, and a Colt .45-caliber automatic handgun. The submachine gun was not registered.

Babb and Douglass were subsequently arrested and indicted on several federal charges: conspiracy to possess marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (Count II); conspiracy to import marijuana from Mexico in violation of 21 U.S.C. § 952 (Count III); possession of an unregistered machine gun in violation of 26 U.S.C. § 5861(d) and 18 U.S.C. § 2 (Count VII); possession of a firearm unlawfully during the commission of a felony in violation of 18 U.S.C. § 924(c)(2) (amended after the indictment) and 18 U.S.C. § 2 (Count X); and interstate travel in aid of a racketeering enterprise in violation of 18 U.S.C. § 1952 and 18 U.S.C. § 2 (Counts XI, XII, and XIII). The count numbers are as they were before being renumbered.

Babb and Douglass were tried together on these charges along with Miller, who in addition was tried on the charge of engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848. In exchange for grants of immunity, Cooper and Branagan testified at trial against each defendant. Neither Babb nor Douglass called witnesses in defense. Although Miller did take the stand after calling two witnesses who attacked Cooper's reputation for truthfulness and veracity, Miller was effectively contradicted and impeached during cross-examination.

Before trial, the counts were renumbered and at the conclusion of the evidence, the trial court dismissed Count VII (Count IV as renumbered), which alleged the violation of 26 U.S.C. § 5861(d) and 18 U.S.C. § 2. The jury convicted the appellants of all the remaining charges levelled against them.

## II.

## DISCUSSION

### A. *The Firearms Charge*
#### (1) Jury Instructions

In the original indictment, Babb and Douglass were charged with two separate offenses relating to the submachine gun recovered at the site of the plane crash. First, they were indicted for possession of an unregistered machine gun in violation of 26 U.S.C. § 5861(d) and 18 U.S.C. § 2; second, they were indicted for unlawfully carrying a firearm during the commission of a felony, in violation of 18 U.S.C. § 924(c)(2) and 18 U.S.C. § 2.

At trial, the government introduced into evidence certificates of the custodian of the National Firearms Register and Transfer Record, to the effect that a search was conducted and no record was found that the submachine gun discovered at the crash site was registered to the defendants or any of their alleged associates. Although the district court dismissed the first firearms charge at the close of the evidence, it instructed the jury that it could consider the evidence that the weapon was unregistered when deliberating over the other firearms charge.

The district court summarized the elements of that second charge as follows:

First: that a co-conspirator or co-conspirators committed a felony or felonies in furtherance of the conspiracy for which they might be prosecuted in a United States Court;

Second: that during the commission of the felony the co-conspirator or co-con-

spirators carried or caused to be carried a firearm; and

Third: that the carrying of the firearm itself violated a federal law. Specifically, that the firearm was not registered to the defendants or a conspirator in the National Firearms Registration and Transfer Board in violation of Title 26, United States Code, Section 5861(d).

Reporter's Transcript at 2295–96 [hereinafter cited as R.T.].

■ Babb and Douglass contend that this instruction was erroneous on the ground that a weapon's unregistered status is not an element of the offense under 18 U.S.C. § 924(c)(2). Because it is a question of law whether the district court's instructions to the jury misstated the elements of a statutory crime, we review this claim *de novo. See United States v. McConney,* 728 F.2d 1195, 1201 (9th Cir.) (en banc) (questions of law are reviewed *de novo* ), *cert. denied,* —— U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984); *United States v. Wilson,* 720 F.2d 608, 609 n. 2 (9th Cir.1983) (interpretation of a statute is reviewed *de novo* ), *cert. denied,* 465 U.S. 1034, 104 S.Ct. 1304, 79 L.Ed.2d 703 (1984).

18 U.S.C. § 924(c)(2) provides:

Whoever ... carries a firearm unlawfully during the commission of any felony for which he may be prosecuted in a court of the United States, shall, in addition to the punishment provided for the commission of such felony, be sentenced to a term of imprisonment for not less than one year nor more than ten years.

*Id.*

■ The statute makes plain that to violate 18 U.S.C. § 924(c)(2), the defendant must be carrying the firearm *unlawfully. See United States v. Dixon,* 558 F.2d 919, 921 n. 1 (9th Cir.1977), *cert. denied,* 434 U.S. 1063, 98 S.Ct. 1237, 55 L.Ed.2d 764 (1978). Moreover, the unlawfulness of the "carrying" must be established apart from the accompanying felony: thus, "the requisite elements for conviction under the statute [are] satisfied only if the act of carrying the firearm was in and of itself unlawful." *Id.* at 921; *accord United States v.*

*Garcia,* 555 F.2d 708, 711 (9th Cir.1977). Unlawfulness may be established for these purposes "by resorting to any other applicable law, federal, state or local." *Id.* (citing *United States v. Howard,* 504 F.2d 1281 (8th Cir.1974) ).

Here the "carrying" of the gun was unlawful because it violated 26 U.S.C. § 5861(d). That provision makes it a crime for any person "to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." *Id.* Such a failure to register is exactly the sort of legal violation that constitutes an independent basis of unlawfulness under 18 U.S.C. § 924(c)(2). The trial court's instructions are above reproach. In fact, had the court heeded the appellants' exhortations and omitted from its instructions on 18 U.S.C. § 924(c)(2) all reference to the alleged failure to register the firearm, it would have committed reversible error. *See Garcia,* 555 F.2d at 711–12. We therefore affirm the district court's jury instructions.

(2) Sufficiency of the Evidence

Babb and Douglass next assert that the district court should have dismissed the firearms charge because "there was no evidence presented to demonstrate that [they] knew or had any reason to know Waggoner possessed the [submachine gun]." Appellants' Opening Brief at 15 (emphasis omitted). They reason that, lacking knowledge of the gun's existence, they could not have aided and abetted Waggoner in carrying it during the commission of a felony. *See id.* They argue in addition that Waggoner's possession of the gun could not reasonably have been foreseen by them "as a natural consequence of involvement in a marijuana trafficking conspiracy." *Id.*

■ Under the rule first enunciated in *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), each conspirator is liable for the criminal acts of his co-conspirators as long as the following conditions are met: (1) the substantive offense was committed in furtherance of the conspiracy; (2) the offense fell within the

scope of the unlawful project; and (3) the offense could reasonably have been foreseen as a necessary or natural consequence of the unlawful agreement. *Id.* at 647–48, 66 S.Ct. at 1184; *see United States v. Friedman,* 593 F.2d 109, 117 (9th Cir.1979). The judge's instructions conformed to this rule. He informed the members of the jury that if they found a defendant guilty of conspiracy, they could also find him guilty of the substantive offenses charged, provided that the government established all the essential elements of the offense, as well as the *Pinkerton* factors (though not referred to as such), beyond a reasonable doubt. *See* R.T. at 2294–96. Because the jury found Douglass and Babb guilty of the firearms charge, it must have found either that the defendants knew Waggoner was carrying the gun, or that they could reasonably have foreseen it. We must decide whether a rational jury could have made such an inference based on the evidence in the record.

■ On a challenge to the sufficiency of the evidence, the standard of review is whether there is substantial evidence to support the conviction. *See United States v. Nolan,* 700 F.2d 479, 485 (9th Cir.), *cert. denied,* 462 U.S. 1123, 103 S.Ct. 3095, 77 L.Ed.2d 1354 (1983). Therefore, we must determine whether a reasonable jury, after viewing the evidence in the light most favorable to the government, could have found the defendants guilty beyond a reasonable doubt of each essential element of the crime charged. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *accord United States v. Universal Trade & Industries,* 695 F.2d 1151, 1153 (9th Cir.1983).

At the threshold we regard three facts established at trial to be especially relevant: (1) the existence of a drug conspiracy; (2) the substantial amount of money involved; and (3) the defendants' long association with Waggoner. In *United States v. Alvarez,* 755 F.2d 830 (11th Cir.1985), the Eleventh Circuit affirmed a "vicarious" conviction under the *Pinkerton* rule in circumstances somewhat similar to those in this case. The defendants in *Alvarez* had been involved in a drug conspiracy and were tried, in part, for a murder committed by a co-conspirator. The court held that, in light of the amount of drugs and money involved in the operation, the jury could have inferred that the conspirators "must have been aware of the likelihood ... that at least some of their number would be carrying weapons." *Id.* at 849.

This circuit also has commented on the connection between narcotics and guns. In *United States v. Martin,* 599 F.2d 880 (9th Cir.), *cert. denied,* 441 U.S. 962, 99 S.Ct. 2408, 60 L.Ed.2d 1067 (1979), we held that firearms may be relevant evidence of an accused's involvement in the drug trade, *see id.* at 889, *cited with approval in United States v. Rubio,* 727 F.2d 786, 798 (9th Cir.1983). Other circuits share this view. *See, e.g., United States v. Arnott,* 704 F.2d 322, 325–26 (6th Cir.), *cert. denied,* 464 U.S. 948, 104 S.Ct. 364, 78 L.Ed.2d 325 (1983); *United States v. Lippner,* 676 F.2d 456, 463 (11th Cir.1982); *United States v. Wiener,* 534 F.2d 15, 18 (2d Cir.), *cert. denied,* 429 U.S. 820, 97 S.Ct. 66, 50 L.Ed.2d 80 (1976).

We recognize, of course, that these cases are not directly on point. The appellate courts in these cases were simply reviewing evidentiary decisions of trial courts for abuse of discretion. Moreover, these courts deemed guns relevant evidence of narcotics crimes, whereas, in the instant case, the jury apparently made the reverse inference. Nonetheless these cases lend support to the reasonableness of the jury's verdict. We believe the conviction is further bolstered by evidence that the conspiracy had a relatively small number of participants and that the appellants and Waggoner knew one another well. The jury could reasonably have inferred from such facts that each conspirator was likely to know the others' methods of operation.

■ In sum, the evidence supports the inference that the appellants knew about the weapon—or at least, that they could reasonably have foreseen Waggoner's pos-

session of it. Hence, we affirm the district court's denial of the motion for aquittal.

## B. *Multiplicity*

The appellants were convicted of three separate violations of the Travel Act, 18 U.S.C. § 1952—one for their co-conspirators' plane flight down to Mexico on December 6, 1981 (Count VI); one for the flight back to the United States on the same date (Count VII); and one for Douglass and Hodge's automobile trip to Mexico to assume their post at the refueling station (Count VIII) (Counts XI, XII, and XIII as initially numbered). The court imposed five-year sentences for each count, to be served concurrently. Appellants contend on appeal that Counts VI and VII were multiplicitous [1] because the flights in and out of Mexico constituted a single transaction—a single "act of travel"—for purposes of 18 U.S.C. § 1952. The government counters that each crossing of the border was a separate statutory offense.

■ The parties differ initially over the applicable standard of review. The appellants contend that the question is one of law and should therefore be reviewed *de novo.* The government, on the other hand, cites Ninth Circuit precedent for the proposition that the trial court's decision not to consolidate counts should be reversed only for abuse of discretion. We agree with the appellants in this regard.

Although the court in *United States v. Kennedy,* 726 F.2d 546 (9th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 365, 83 L.Ed.2d 365 (1984), did state the rule the government advances, it proceeded to consider whether the statute at issue permitted multiple convictions under the circumstances presented, *see id.* at 547–48. The court's treatment of the issue was functionally indistinguishable from *de novo* review. Moreover, the appellants rest their claim of error on wholly legal grounds: they contend that the district court misconstrued the unit of prosecution prescribed by the Travel Act. Because it is settled that a district court's interpretation of a statute is subject to *de novo* review, *see United States v. Wilson,* 720 F.2d 608, 609 n. 2 (9th Cir.1983), *cert. denied,* 465 U.S. 1034, 104 S.Ct. 1304, 79 L.Ed.2d 703 (1984), we apply that standard here.[2]

The Travel Act, 18 U.S.C. § 1952, provides in relevant part:

> Whoever travels in interstate or foreign commerce ... with intent to ... promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, and thereafter performs or attempts to perform [the above-mentioned acts], shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

*Id.*

■ In *United States v. Polizzi,* 500 F.2d 856 (9th Cir.1974), *cert. denied,* 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820 (1975), we held that "each act of travel may be treated as a separate violation of section 1952." *Id.* at 998–99. That holding does not resolve the issue we must decide here—namely, what exactly constitutes an "act of travel" for purposes of the statute? Ample guidance is provided by *United States v. Kaiser,* 660 F.2d 724 (9th Cir.1981), *cert. denied,* 455 U.S. 956, 102 S.Ct. 1467, 71 L.Ed.2d 674 (1982), *overruled en banc on*

---

1. Multiplicity has been defined as "'charging the same defendant with the same offense in several different counts.'" *United States v. De-Rosa,* 670 F.2d 889, 895 (9th Cir.) (quoting *United States v. Bartemio,* 547 F.2d 341, 345 (7th Cir.), *cert. denied,* 419 U.S. 994, 95 S.Ct. 305, 42 L.Ed.2d 266 (1974)), *cert. denied,* 459 U.S. 993, 103 S.Ct. 353, 74 L.Ed.2d 391 *and* 459 U.S. 1014, 103 S.Ct. 372, 74 L.Ed.2d 507 (1982). When concurrent sentences have been imposed in such a case, the error may be remedied on appeal by vacating the convictions of all but one

of the multiplicitous counts. *See Ball v. United States,* —— U.S. ——, 105 S.Ct. 1668, 1673, 84 L.Ed.2d 740 (1985); *United States v. Anderson,* 709 F.2d 1305, 1306 (9th Cir.1983), *cert. denied,* 465 U.S. 1104, 104 S.Ct. 1605, 80 L.Ed.2d 135 (1984).

2. We hasten to emphasize that our review would be more limited if the multiplicity claim turned not on a question of statutory interpretation, but on the trial court's assessment of the facts.

*other grounds, United States v. DeBright,* 730 F.2d 1255, 1259 (9th Cir.1984). In upholding defendants' convictions for four separate violations of the Travel Act in *Kaiser,* we observed that "the evidence was sufficient to establish that the defendants traveled across state lines four times in pursuit of their unlawful business enterprise, thus violating the statute." *Id.* at 731. While the dispute in *Kaiser* was not over the proper unit of prosecution under 18 U.S.C. § 1952, but rather over whether the evidence was sufficient to support *any* conviction under the statute, *see id.,* we hold nonetheless that the view of the statute expressed there is a permissible one. Each crossing of the border may, in the prosecutor's discretion, be charged as a separate offense under the Travel Act. The appellants' multiplicity claim is therefore without merit.

### C. *Severance*

As we previously noted, the appellants were indicted and tried with James Miller for their participation in the two-day conspiracy on December 5 and 6, 1981, even though Miller was charged with the additional offense of operating a Continuing Criminal Enterprise in violation of 21 U.S.C. § 848. Counsel for appellants maintained before and throughout the trial that the consolidation with Miller's prosecution was prejudicial to their clients, and they repeatedly moved for severance under rule 14 of the Federal Rules of Criminal Procedure. Rule 14 provides that the court may grant a severance "[i]f it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together." The district court consistently denied the motion.

On appeal, the appellants contend that this denial deprived them of a fair trial. They point out that the vast majority of the evidence introduced at trial related solely to the charge against Miller of engaging in a continuing criminal enterprise, and that much of this evidence was not only inapplicable to them, but actually prejudicial.

Among the examples they cite are the following: (1) evidence of cocaine transactions that occurred long after the two-day marijuana conspiracy was completed; (2) evidence of Miller's willingness to kill people; (3) evidence that Babb was present at Miller's residence when Miller was arrested; and (4) a warranty deed and other evidence attesting to Babb, Douglass, and Miller's joint ownership of a ranch. In the appellants' eyes, this evidence—even though accompanied by limiting instructions—inevitably "rubbed off" on them. They demand a new trial.

We review the denial of the motion to sever under Fed.R.Crim.P. 14 only in order to determine whether the district court abused its discretion. *See United States v. Rogers,* 722 F.2d 557, 561 (9th Cir.1983), *cert. denied,* — U.S. —, 105 S.Ct. 129, 83 L.Ed.2d 70 (1984). To obtain reversal, a party must demonstrate " 'that joinder was so manifestly prejudicial that it outweighed the dominant concern with judicial economy.' " *United States v. Monks,* 774 F.2d 945, 948 (9th Cir.1985) (quoting *United States v. Armstrong,* 621 F.2d 951, 954 (9th Cir.1980)). As we made clear in *United States v. Escalante,* 637 F.2d 1197 (9th Cir.), *cert. denied,* 449 U.S. 856, 101 S.Ct. 154, 66 L.Ed.2d 71 (1980), this burden is a difficult one to carry. The moving party

> must show more than that a separate trial would have given him a better chance for acquittal. He must also show violation of one of his substantive rights by reason of the joint trial: unavailability of full cross-examination, lack of opportunity to present an individual defense, denial of Sixth Amendment confrontation rights, lack of separate counsel among defendants with conflicting interests, or failure properly to instruct the jury on the admissibility of evidence as to each defendant. In other words, the prejudice must have been of such magnitude that the defendant was denied a fair trial.

*Id.* at 1201 (citations omitted). The trial court's ruling is rarely disturbed. *Id.; ac-*

_cord United States v. Gonzales_, 749 F.2d 1329, 1333 (9th Cir.1984).

▮ We have recognized that a great disparity in the amount of evidence introduced against joined defendants may, in some cases, be grounds for severance. _See United States v. Donaway_, 447 F.2d 940 (9th Cir.1971) (holding that district court abused its discretion in refusing to grant defendant's motion for severance where the great majority of evidence introduced at the joint trial related only to other defendants). In assessing the prejudicial effect of a joint trial, the primary consideration is whether "the jury can reasonably be expected to compartmentalize the evidence as it relates to separate defendants, in view of its volume and the limited admissibility of some of the evidence." _Escalante_, 637 F.2d at 1201; _accord Monks_, 774 F.2d at 949; _United States v. Gaines_, 563 F.2d 1352, 1355 (9th Cir.1977); _United States v. Kaplan_, 554 F.2d 958, 967 (9th Cir.), _cert. denied_, 434 U.S. 956, 98 S.Ct. 483, 54 L.Ed.2d 315 (1977). A crucial factor is the judge's diligence—or lack thereof—in instructing the jury on the purposes to which various strands of evidence may be put. _See Monks_, 774 F.2d at 949; _Escalante_, 637 F.2d at 1201. In fact, we have stated that "[t]he prejudicial effect of evidence relating to the guilt of codefendants is generally held to be neutralized by careful instruction by the trial judge." _Id._ (citing cases).

▮ It is clear that much of the evidence introduced at trial only against Miller did not reflect favorably upon the appellants. Nonetheless, the trial judge carefully and repeatedly cautioned the jury about the limited admissibility of such material. Moreover, because the appellants were being tried only for their alleged involvement in a two-day marijuana conspiracy, it is difficult to believe that the jury—aided by instructions—would have been unable to distinguish between evidence relating to that transaction and evidence establishing other occurrences. The district court did

not abuse its discretion in denying the motions to sever.

AFFIRMED.