24 F.3d 251
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff--Appellee,
v.
Gerardo Martinez RODRIGUEZ, aka: Gerardo M. Rodriguez, aka:
Jerry Rodriguez, Defendant--Appellant.
 No. 92-50519.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 2, 1994.
Decided May 18, 1994.
 
 Before: FLETCHER, PREGERSON, and NORRIS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 I. BACKGROUND
 
 2
 Defendant, Gerardo Rodriguez, appeals his jury conviction for conspiracy to possess and distribute a controlled substance, 21 U.S.C. Sec. 846, possession with the intent to distribute a controlled substance, 21 U.S.C. Sec. 841(a)(1), and carrying or using a firearm during the commission of a drug trafficking crime. 18 U.S.C. Sec. 924(c). He also appeals his 295 month prison sentence. This court has jurisdiction over the appeal under 28 U.S.C. Sec. 1291.
 
 
 3
 Mr. Rodriguez asserts four claims of error: (1) that the district court should have severed his case from that of a codefendant, Ron Burrows; (2) that the district court should have excluded an audio tape recording offered in evidence by the prosecution; (3) that there was insufficient evidence to support his conviction; and (4) that there was insufficient evidence to support enhancement of his sentence based on Rodriguez's leadership of the criminal activity. We reject each of these claims. We therefore affirm the conviction and sentence.
 
 II. FACTS
 
 4
 On December 4, 1991, a DEA agent working undercover spoke on the phone with Ronald Burrows, codefendant of appellant, Gerardo Rodriguez. The DEA agent offered to put Mr. Burrows in contact with another undercover agent who, he said, wished to purchase five pounds of methamphetamine. The cost quoted to the DEA agent by Mr. Burrows was "probably" $50,000. Burrows and the agent arranged to meet at a liquor store and travel together to a shopping center parking lot in Van Nuys to meet the supposed purchaser.
 
 
 5
 According to the testimony of codefendant Burrows, he contacted Mr. Rodriguez, his supplier, to secure the methamphetamine for sale. The next day, at Rodriguez's direction, Burrows and Rodriguez drove to a hotel room in Oceanside, California, where Rodriguez retrieved the methamphetamine and delivered it to Burrows. Codefendant Burrows then drove back to the San Fernando Valley, joined with the DEA agent, and went with him to the shopping center. They were met by a second DEA agent, introduced by the first, who posed as the potential buyer. Codefendant Burrows was arrested after he produced the five bags of methamphetamine.
 
 
 6
 Codefendant Burrows immediately waived his Miranda rights and attempted to convince the agents that he, too, was working undercover, helping Riverside County Deputy Sheriff Kenneth Vann to arrest Mr. Rodriguez. Burrows agreed to assist the DEA agents by placing a recorded phone call to the appellant, Rodriguez, who he claimed was his methamphetamine supplier. During the course of two phone calls, the contents of which are disputed, codefendant Burrows arranged to meet Rodriguez at the shopping center parking lot in Van Nuys.
 
 
 7
 Five minutes later, Mr. Rodriguez left a hotel parking lot in a Ford Bronco with two other men and was driven to the Van Nuys shopping center. The driver parked the Bronco next to where codefendant Burrows and the DEA agent were waiting. Codefendant Burrows introduced the DEA agent to Rodriguez and the others. Then, the DEA agent told Rodriguez and the other occupants of the Bronco that he had only $30,000, enough for only three of the five packages of methamphetamine. Rodriguez nodded his head. The agent offered to trade his truck for the remaining two packages. Rodriguez responded by asking whether the agent had papers for the truck. After being assured that the agent did have the papers, Rodriguez said to the other two people in the car, "Let's go check out the truck."
 
 
 8
 At that point DEA agents, wearing police identification, approached the Bronco, orally identifying themselves as police officers. Mr. Rodriguez and the other two people in the car began to run. When Rodriguez was caught, the officers found a handgun in his pants.
 
 III. DENIAL OF SEVERANCE MOTION
 
 9
 Mr. Rodriguez moved for severance based on Federal Rule of Criminal Procedure 14, which provides in part:
 
 
 10
 If it appears that a defendant or the government is prejudiced by a joinder.... of defendants ... the court may ... grant a severance of defendants or provide whatever other relief justice requires.
 
 
 11
 We review a district court's denial of a motion to sever for abuse of discretion. United States v. Cuozzo, 962 F.2d 945, 949 (9th Cir.), cert. denied, 113 S.Ct. 475 (1992). The trial judge's decision will seldom be disturbed. United States v. Tootick, 952 F.2d 1078, 1080 (9th Cir.1991). The party seeking reversal bears the heavy burden of proving that the joint trial caused such "clear," "manifest," or "undue" prejudice that the accused was denied a fair trial. Cuozzo, 962 F.2d at 950 (quoting United States v. Castro, 887 F.2d 988, 996 (9th Cir.1989)).
 
 
 12
 Mr. Rodriguez contends that the district court should have severed his case from that of codefendant Burrows because Burrows's informer defense was antagonistic to his own. Codefendant Burrows's defense at trial was that he took part in the drug transaction pursuant to a deal with Deputy Sheriff Vann to help catch Rodriguez. The government responds, first, that Rodriguez waived his right to appeal the denial of severance, and second, that the severance motion was groundless. We conclude that there was no waiver of the right to severance, but that the joint trial did not cause such manifest prejudice that Rodriguez was denied a fair trial.
 
 A. Waiver of Severance
 
 13
 We have frequently said that a motion for severance is waived unless renewed at the close of evidence. See, e.g., United States v. Smith, 893 F.2d 1573, 1581 (9th Cir.1990); United States v. Sanchez-Lopez, 879 F.2d 541, 551 (9th Cir.1989). "Failure to renew a motion for severance under Rule 14 at the close of evidence suggests that the alleged prejudice from joinder of the offenses did not seem so substantial to appellants in the context of the trial." Sanchez, 879 F.2d at 551.
 
 
 14
 However, this rule is not applied inflexibly. United States v. Free, 841 F.2d 321, 325 (9th Cir.), cert. denied, 468 U.S. 1046 (1988). "Diligent pursuit of a severance motion is the guiding principle" for determining if the severance motion has been waived by failure to reintroduce the motion at the close of evidence. United States v. Kaplan, 554 F.2d 958, 966 (9th Cir.), cert. denied, 434 U.S. 950 (1977). For example, we have long recognized an exception to the rule where the defendant's motion accompanies introduction of the allegedly prejudicial evidence and where renewal of the motion at the close of evidence would constitute an unnecessary formality. See United States v. Pache, 913 F.2d 1375, 1379 (9th Cir.1990).
 
 
 15
 In the case at bar, Mr. Rodriguez moved for severance before trial, prior to introduction of evidence, and at the conclusion of the government's case in chief. Each time the motion was denied without prejudice. Significantly, Rodriguez made a fourth and final motion for severance at the conclusion of closing arguments. It cannot be said that he failed to diligently pursue his severance motion.
 
 B. Grounds for Severance
 
 16
 "Mutually antagonistic defenses are not prejudicial per se," Zafiro v. United States, 113 S.Ct. 933, 938 (1993), and even if prejudice is shown Rule 14 does not require severance. Id. However, severance becomes more appropriate as the defenses move further along the continuum from merely inconsistent to antagonistic. See Tootick, 952 F.2d at 1081. "[A] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro, 113 S.Ct. at 938. Where, as here, a codefendant's defense is grounded on his contention that he was acting as a government informant, severance is not mandated unless acceptance of one party's defense precludes the acquittal of the other party. United States v. Ramirez, 710 F.2d 535, 546 (9th Cir.1983).
 
 
 17
 Whether the risk of prejudice at the time of Mr. Rodriguez's initial severance motion was great enough to warrant a separate trial is a close question. On the one hand, here, as in Ramirez, the informer defense, even if believed, neither relieved the prosecution of its burden nor ensured its success. The jury could have believed that codefendant Burrows thought he was investigating Rodriguez, without believing that the evidence was sufficient to convict Rodriguez of the particular crimes charged. On the other hand, at the time of the initial severance motion, the district judge was aware that a joint trial would result in the admission of damaging testimony that would have been inadmissible if Rodriguez were tried separately--namely the evidence that the sheriff's department was interested in snaring Rodriguez. As the Supreme Court explained in Zafiro, a serious risk that the jury will be prevented from making a reliable judgment of guilt or innocence may occur "when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant." 113 S.Ct. at 933. In this case, from an ex ante perspective, such a risk was present. Therefore, the district court should have granted Mr. Rodriguez's initial motion for a separate trial.
 
 
 18
 But that is not the end of our inquiry. As discussed above, where a district court fails to grant a separate trial, a retrial is not warranted unless the defendant shows "that the magnitude of the prejudice denied him a fair trial." Ramirez, 710 F.2d at 546. Therefore we must ask whether, as the joint trial actually unfolded, the evidence admitted that would have been inadmissible in a separate trial was prejudicial enough to deny Mr. Rodriguez a fair trial. We conclude that the evidence was not so prejudicial.
 
 
 19
 The evidence that was admitted that would not have been admitted in a joint trial consisted of testimony by the codefendant, Mr. Burrows, and by Sheriff's Deputy Vann. Each testified that Deputy Vann enlisted Burrows's help to investigate Rodriguez. Burrows made two damaging statements during the joint trial that would have been inadmissible in separate trials. (1) He testified that he knew Rodriguez from "drug related activities." SER at 160. (2) He testified that he told Deputy Vann that Burrows "could and [he] would do anything that [he] could to target [Rodriguez]" and to help Deputy Vann's investigation. Id. at 162. Partially corroborating the above statements, Deputy Vann testified that he spoke to codefendant Burrows about targeting Rodriguez. "In the event that Mr. Rodriguez was distributing methamphetamine in Coachella Valley, I wanted to see if I could arrest him for sales or possession for sales of Methamphetamine." RT 6/4/92 at 240. Finally, Deputy Vann testified that he wanted to use codefendant Burrows to purchase drugs from Rodriguez.
 
 
 20
 In view of the overwhelming evidence of Rodriguez's guilt, the above statements were not critical or even important to the government's case. The incriminating evidence included the fact that Rodriguez was caught red-handed at the scene of the drug transaction, that he appeared to direct the operation, that he ran when the police identified themselves, and that he was found with a gun. It also included the testimony of undercover agents that they eavesdropped on Burrows as he set up the drug deal with Rodriguez, and that they observed the deal. And finally, it included Burrows's testimony, admissible even in a separate trial, that he accompanied Rodriguez to Oceanside to pick up the drugs, that he called Rodriguez to set up the deal, and that Rodriguez actually brought the drugs to the parking lot as he and Burrows had agreed.
 
 
 21
 Finally, "[a] crucial factor is the judge's diligence--or lack thereof--in instructing the jury on the purposes to which various strands of evidence may be put." United States v. Douglass, 780 F.2d 1472 (9th Cir.1986). Before the statements by codefendant Burrows and again before the statements by Deputy Vann, the judge cautioned the jury that evidence that Mr. Rodriguez was the subject of an investigation was not evidence of Rodriguez's guilt, and was not to be considered as such. This cautionary instruction was again repeated before the jury deliberations. In light of these instructions, and in light of the overwhelming evidence against Rodriguez, the district court's failure to sever was harmless.
 
 
 22
 IV. ADMISSION INTO EVIDENCE OF THE AUDIO TAPE AND USE OF THE GOVERNMENT TRANSCRIPTS.
 
 
 23
 The district court admitted into evidence the tape recording of two telephone calls made by codefendant Burrows during which he set up the parking lot methamphetamine purchase. In addition, the district court allowed the jury to use two government transcripts of these conversations which were not admitted into evidence. Mr. Rodriguez objects that the tape recordings are for the most part inaudible, and that one of the government transcripts was improperly created by one of the participants in the conversation.
 
 
 24
 Tape recordings are admissible even if they are partially inaudible so long as they have probative value. United States v. Hurd, 642 F.2d 1179, 1183 (9th Cir.1981). Whether the tapes in question were sufficiently audible to have probative value is a question of fact and we therefore review for abuse of discretion. United States v. Wood, 943 F.2d 1048, 1055 n. 9 (9th Cir.1991).
 
 
 25
 There is no evidence of abuse of discretion other than that a transcript prepared by the defense differed markedly from those prepared by the government. This in itself is probative of nothing. The district court listened to the tape and received the testimony of the DEA agent who was listening in to the conversation at the time, and who transcribed the conversation, before admitting it into evidence. We decline to second guess the district court on this issue.
 
 
 26
 Mr. Rodriguez contends that even if the tapes themselves were admissible, the jury should not have been able to make use of the government's transcripts. The government prepared two transcripts. It is unclear who prepared the first transcript, but the second one was prepared by DEA agent Mishel Piastro, the same agent who was present and listening with his ear next to the receiver when Burrows made the phone calls. Agent Piastro testified that he used the first government transcript as a draft while preparing the second. These two government transcripts, together with a third transcript prepared by the defense, were made available to the jury as an aid while they listened to the tape recording. The district judge explained during his charge to the jury that the transcriptions were not in evidence. Later, the jury was permitted to have the tape replayed, again using all three transcripts as aids. Again the judge explained that the transcripts were not in evidence, and further cautioned that, "[i]f you observe any difference between the tape and the transcript, it's the tape that controls." RT 6/10/92 at 19.
 
 
 27
 We review for abuse of discretion a district court's decision to allow a jury to use a transcript as a listening aid. United States v. Booker, 952 F.2d 247, 249 (9th Cir.1991). We have held that a government-prepared transcript may be used by the jury to follow a tape recording where the district judge reviews the transcript for accuracy, the agent who participated in the taped conversation testifies to its accuracy, and the district judge gives the jury a limiting instruction. Id.
 
 
 28
 Here, a limiting instruction was given, and agent Piastro, who listened in on the taped conversation, testified to the accuracy of the transcription which he prepared. However, although the district court judge listened to the tape, he did not make an independent determination of the accuracy of any of the transcripts. Rather, he provided the jury with three competing transcripts and permitted the jury to decide which, if any, was accurate. We see nothing inherently prejudicial in this procedure. It properly casts the jury in its familiar fact finding role, required to sort out the competing claims of government and defendant in light of the full body of evidence.
 
 
 29
 Although there is nothing inherently prejudicial in providing more than one transcript, there may have been some prejudice given the difference in nature between the government and defense transcripts. The government provided transcriptions for much of the conversation which, according to the defense transcript, was inaudible. It is possible that the jury was thereby induced by suggestion to hear incriminating statements that were not actually audible.
 
 
 30
 Nevertheless, in view of the overwhelming evidence of guilt without the transcripts, see supra at 8-9, and in view of the judge's instruction that the transcripts were not in evidence, we conclude that any error by the district court in allowing the transcripts was harmless.
 
 V. SUFFICIENCY OF THE EVIDENCE
 
 31
 Mr. Rodriguez asserts that there was insufficient evidence to support his conviction. The test for sufficiency of evidence is whether, " 'reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). There is little doubt that the evidence against Mr. Rodriguez passes this test.
 
 
 32
 The elements of count one, conspiracy, consist of "(1) an agreement to accomplish an illegal objective; (2) one or more overt acts in furtherance of the illegal objective; and (3) the intent to commit the underlying substantive crime." United States v. Ray, 930 F.2d 1368, 1371 (9th Cir.1990), cert. denied, 498 U.S. 1124 (1991). The elements of count two, possession with intent to distribute, are (1) possession (2) of a controlled substance (3) with intent to distribute. 21 U.S.C. Sec. 841(a)(1).
 
 
 33
 The testimony of the DEA agents about Burrows's side of the conversation between Burrows and Rodriguez, together with their testimony regarding what transpired at the drug deal site, established, when viewed in the light most favorable to the prosecution, that Rodriguez agreed with Burrows to illegally distribute methamphetamine. Mr. Rodriguez's actions at the parking lot were sufficient to establish that an overt act was taken in furtherance of the conspiracy. His evident authority to negotiate a trade of the DEA agent's truck for two bags of methamphetamine demonstrated "possession" as we have used that term. See United States v. Castillo, 844 F.2d 1374, 1392 (9th Cir.1988) ("A person has constructive possession of an object if he has sufficient dominion and control to give him the power of disposal. Possession and knowledge can be established by circumstantial evidence."). And, finally, Mr. Rodriguez's intent can be inferred from his knowing participation in the drug sale.[1]
 
 
 34
 Lastly, Mr. Rodriguez asserts that the evidence against him on count 3, use of a firearm during commission of a drug trafficking crime, was also insufficient. However, his only contention in this regard is that he did not commit a drug trafficking crime. Since the evidence was sufficient to convict Rodriguez on counts one and two, it was also sufficient to convict him of use of a firearm during commission of these crimes.
 
 
 35
 VI. SENTENCE ENHANCEMENT FOR LEADERSHIP, SUPERVISION, OR ORGANIZATION OF THE CRIME.
 
 
 36
 Mr. Rodriguez contends that the district court erred when it adjusted his sentence upward, because it erroneously concluded that he was an organizer, leader or manager of his crimes. We affirm the district court's sentence.
 
 
 37
 We review the district court's factual finding that Mr. Rodriguez was a leader in criminal activity for clear error. United States v. Bos, 917 F.2d 1178 (9th Cir.1990). The district court's findings were made for the purpose of applying Sentencing Guideline Sec. 3B1.1(c), which provides for a two level enhancement where defendant was "an organizer, leader, manager, or supervisor in any criminal activity" that involved at least one other criminally responsible person. See United States v. Anderson, 942 F.2d 606, 614 (9th Cir.1991) (en banc).
 
 
 38
 The conclusion that Mr. Rodriguez was a leader of the illegal transaction is supported by codefendant Burrows's testimony that Rodriguez supplied the drugs which were the subject of the sale. It is additionally supported by the leadership role he played in his conversation with Mr. Burrows, during which he determined the location where the transaction would take place. Finally, it is supported by the authority he demonstrated over the negotiations with the DEA agent in the parking lot.
 
 
 39
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Mr. Rodriguez stipulated that the seized methamphetamine was intended for distribution rather than personal use. RT 6/3/92 at 131