64 F.3d 667
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jose CHAVEZ-VASQUEZ; Sergio Adan-Torrez; and Felipe
Almanza,* Defendants-Appellants.
 Nos. 94-10239, 94-10240, 94-10241.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 12, 1995.
Decided Aug. 17, 1995.
 
 Before: HUG, ALARCON, and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Jose Chavez-Vasquez and Felipe Almanza challenge their sentences, and Sergio Adan-Torrez challenges his conviction and his sentence. Adan-Torrez and Almanza have joined in each other's arguments to the extent they are applicable. We have jurisdiction under 28 U.S.C. Sec. 1291, and we affirm in all respects, except that we remand to the district court to have it vacate and stay the entry of judgment and imposition of sentence on either Count 8 or Count 9 for Adan-Torrez.
 
 I.
 
 3
 Each appellant argues that 21 U.S.C. Sec. 841(b)(1)(A)(iii) violates his constitutional rights because it impermissibly differentiates between cocaine base and cocaine powder and that it is unconstitutionally vague because it does not define cocaine base. We have previously held that section 841(b)(1)(A)(iii) neither violates the Equal Protection Clause, United States v. Harding, 971 F.2d 410, 414 (9th Cir.1992), cert. denied, 113 S.Ct. 1025 (1993), nor is it unconstitutionally vague, United States v. Van Hawkins, 899 F.2d 852, 854 (9th Cir.1990). In the alternative, appellants urge us to reconsider the above cases and reverse them. We reject this suggestion, however, because "a panel not sitting en banc has no authority to overturn Ninth Circuit precedent." United States v. Lucas, 963 F.2d 243, 247 (9th Cir.1992).
 
 II.
 
 4
 Chavez-Vasquez contends that the Government failed to establish that the substance underlying his conviction was cocaine base, and thus his sentence was improperly imposed under 21 U.S.C. Sec. 841(b)(1)(A)(iii). We do not agree.
 
 
 5
 Chavez-Vasquez' counsel entered into a joint stipulation in which the appellants stipulated to, among other things, the nature of the substances involved in this case. Not only did Chavez-Vasquez' counsel agree to the stipulation in open court, but no one objected to it when it was read to the jury. This stipulation is binding on Chavez-Vasquez and properly proved that the substance was cocaine base. See United States v. Ferreboeuf, 632 F.2d 832, 836 (9th Cir.1980), cert. denied, 450 U.S. 934 (1981).
 
 III.
 
 6
 Adan-Torrez contends that insufficient evidence existed to support his conviction. When reviewing the sufficiency of the evidence, we determine "whether, viewing the evidence in the light most favorable to the Government, a rational trier of fact could have found all the elements of the crime beyond a reasonable doubt." United States v. Restrepo, 930 F.2d 705, 708 (9th Cir.1991).
 
 
 7
 Adan-Torrez argues that he was merely present at the scene on October 21, 1992, the date the conspiracy ended, and that no evidence was introduced regarding his involvement prior to that date. However, the evidence presented at trial establishes more than his mere presence at the scene. The Government produced the following evidence linking Adan-Torrez to the criminal conspiracy: Almanza, the leader of the conspiracy, answered Agent Ramirez' phone page from Adan-Torrez' residence on October 21. During the discussion, a meeting was scheduled at Wendy's for later that day. In Almanza's place, Adan-Torrez, Christsanto Diaz, and Chavez-Vasquez went to the meeting, without the drugs. There was a misunderstanding as to amount requested and Chavez-Vasquez told Ramirez that he would talk to Almanza and return in a half hour. Chavez-Vasquez also explained to Ramirez that Adan-Torrez and Diaz were his friends and that they were in the business. He told her that they would be going to California to bring back the requested two and one-half pounds of cocaine.
 
 
 8
 At the second meeting at Wendy's, Chavez-Vasquez again showed up with Adan-Torrez and Diaz, and the drugs. Adan-Torrez was driving the car. After Ramirez introduced herself, Adan-Torrez and Diaz introduced themselves to her, using fictitious names. Ramirez testified that Chavez-Vasquez told her that Almanza "noted for Adan to receive the money." At that point, Adan-Torrez got out of the car and went with Ramirez to her car. Ramirez "gave the signal" and the defendants were arrested. Viewing this evidence in a light most favorable to the Government, the jury could reasonably infer that Adan-Torrez' actions were not that of an innocent witness to a drug transaction and point to a more significant involvement than mere presence at the scene. Cf. United States v. Bautista-Avila, 6 F.3d 1360, 1363 (9th Cir.1993).
 
 IV.
 
 9
 Adan-Torrez next contends that the district court erred in denying his motion to sever his case from his codefendants' cases because his involvement was in only four of the seventeen counts charged and because the court admitted confessions of his two codefendants. We review a district court's denial of a motion to sever for abuse of discretion unless it involves a Bruton challenge, which we review de novo. Herd v. Kincheloe, 800 F.2d 1526, 1529 (9th Cir.1986). Except as to his Bruton challenge, Adan-Torrez bears the burden of showing that the "joint trial was so manifestly prejudicial as to require the trial judge to exercise his discretion in but one way, by ordering a separate trial." United States v. Polizzi, 801 F.2d 1543, 1553 (9th Cir.1986).
 
 
 10
 We conclude that Adan-Torrez did not establish that he was unduly prejudiced by the joint trial. We have consistently held that "[d]efendants jointly indicted ordinarily should be jointly tried," giving serious consideration to judicial economy. Id. at 1553. This case provides no exception. Adan-Torrez' only offer of prejudice is that more evidence existed against his codefendants and that he was prejudiced by the "spill-over" effect. However, "that a criminal defendant is jointly tried with a more culpable co-defendant is not alone sufficient to constitute an abuse of the district court's discretion." United States v. Van Cauwenberghe, 827 F.2d 424, 432 (9th Cir.1987), cert. denied, 484 U.S. 1042 (1988).
 
 
 11
 Adan-Torrez also argues that Almanza's and Chavez-Vasquez' statements to Agent Ramirez, as testified to at trial by Ramirez, violated Bruton v. United States, 391 U.S. 123 (1968). However, Adan-Torrez concedes that the statements were redacted in accordance with Bruton. The statements did not facially incriminate Adan-Torrez, and they were relevant to the scope and nature of the conspiracy. Furthermore, the district court properly instructed the jury to consider the guilt and innocence of each codefendant separately. It is presumed the jury obeyed. Van Cauwenberghe, 827 F.2d at 432. The court did not err in denying the motion to sever.
 
 V.
 
 12
 Adan-Torrez next contends that the district court erred in denying his motion to suppress evidence found during the search of the Sweeney residence because the affidavit, on its face, did not establish probable cause. We review the denial of a motion to suppress de novo. United States v. Howard, 828 F.2d 552, 554 (9th Cir.1987).
 
 
 13
 Although the Government concedes that it did not raise the issue of Adan-Torrez' standing before the district court, it has properly raised the issue on appeal. See United States v. Kinsey, 843 F.2d 383, 390 (9th Cir.), cert. denied, 487 U.S. 1223 (1988). We conclude that Adan-Torrez failed to establish standing to contest the legality of the search. He has asserted no privacy interest in the Sweeney residence. See United States v. Singleton, 987 F.2d 1444, 1447 (9th Cir.1993) (to challenge search under Fourth Amendment, defendant bears burden of establishing a legitimate expectation of privacy in the place searched). He did not live at that address and he has not established any other sufficient connection to the residence to assert standing. Thus, we do not reach whether the district court erred in denying his motion to suppress.
 
 VI.
 
 14
 Finally, Adan-Torrez contends that Counts 8 and 9 were multiplicitous and therefore should have been dismissed. We review a multiplicity challenge de novo. See United States v. Douglass, 780 F.2d 1472, 1477 (9th Cir.1986). We agree that the counts were multiplicitous because Adan-Torrez was charged with the same offense in different counts. Id. at 1477 n. 1. The Government concedes that both counts arose out of the same transaction. Because "the possession and the distribution occurred at the same time, in the same place, and with the involvement of the same participants, there should ... be only one punishment." United States v. Palafox, 764 F.2d 558, 563 (9th Cir.1985) (en banc). Therefore, consistent with United States v. Arbelaez, 812 F.2d 530, 534 (9th Cir.1987), we remand to the district court so that it may vacate and stay the entry of judgment and imposition of sentence on either Count 8 or Count 9.
 
 VII.
 
 15
 Almanza raises five separate challenges to his sentencing. We will address each argument separately.
 
 
 16
 First, Almanza contends that the district court erred in sentencing him based on two and one-half pounds of crack cocaine which he never delivered. We do not agree. U.S.S.G. Sec. 2D1.1, application Note 12, provides that a defendant may be held accountable at sentencing for amounts of drugs under negotiation, where, after the Government establishes the amount of drugs in negotiation, the court finds that the defendant failed to show that he did not intend to produce that amount and that he was not reasonably capable of producing that amount. See United States v. Barnes, 993 F.2d 680, 682 n. 1, 683-84 (9th Cir.1993), cert. denied, 115 S.Ct. 96 (1994). We review the district court's factual findings whether Almanza was reasonably capable of producing the negotiated amount for clear error. United States v. Monroe, 943 F.2d 1007, 1019 (9th Cir.1991), cert. denied, 503 U.S. 971 (1992).
 
 
 17
 We conclude that the Government met its burden of establishing the amount of drugs in negotiation through Agent Ramirez' testimony. However, Almanza failed to establish that he lacked both the intent to produce the amount of drugs in negotiation and that he was not reasonably capable of producing that amount. He only offered evidence that a misunderstanding existed as to pounds and ounces between Chavez-Vasquez and Ramirez. Not only is this insufficient to find that the district court clearly erred, it has no bearing on whether Almanza lacked intent and capability of producing two and one-half pounds of cocaine.
 
 
 18
 Second, Almanza contends that the district court improperly enhanced his sentence by two points under U.S.S.G. Sec. 2D1.1(b)(1) because no evidence established that he possessed the weapons and because he was acquitted at trial of the 18 U.S.C. Sec. 924(c) firearms charge. Initially, we conclude that the district court did not clearly err in finding that Almanza possessed the weapons. See United States v. Willard, 919 F.2d 606, 609 (9th Cir.1990), cert. denied, 502 U.S. 872 (1991). Application Note 3 to U.S.S.G. Sec. 2D1.1 states that the enhancement "reflects the increased danger of violence when drug traffickers possess weapons" and "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." The weapons were found in Almanza's residence during the search of his house. The record showed his residence was in close proximity to all of the drug transactions, as well as the fact that the cocaine "cooking" took place at his residence. This was sufficient to determine that the weapons were connected to the offense conduct. See Willard, 919 F.2d at 610.
 
 
 19
 A more difficult question is whether Almanza's acquittal under 18 U.S.C. Sec. 924(c) precludes enhancement under U.S.S.G. Sec. 2D1.1(b)(1). We conclude that it does not. Although under United States v. Brady, 928 F.2d 844, 850 (9th Cir.1991), a sentencing court may not enhance a sentence "based on a factual finding by the district court that effectively overrules the jury's verdict," that is not what happened here. In this case, the court enhanced Almanza's sentence under U.S.S.G. Sec. 2D1.1(b)(1) because the evidence showed that Almanza's weapons were connected to the offense. Section 924(c), on the other hand, requires a finding that the weapon was "used" or "carried" during the offense. Thus, the jury's finding that Almanza did not use or carry the weapons during the drug conspiracy does not preclude the sentencing court from concluding that the weapons were connected to the conspiracy. Therefore, the district court did not err.
 
 
 20
 Almanza's third contention is that the district court erroneously adjusted his sentence for obstruction of justice under U.S.S.G. Sec. 3C1.1 because it punished him for testifying on his own behalf and the court failed to make separate and independent findings regarding his perjurious statements. We review whether Almanza obstructed justice for clear error. United States v. Rodriquez-Macias, 914 F.2d 1204, 1205 (9th Cir.1990). We conclude that the court did not clearly err.
 
 
 21
 Application Note 3(b) under U.S.S.G. Sec. 3C1.1 lists perjury as an example of conduct to which the enhancement applies. The district court, having observed Almanza's testimony, found that "[h]e engaged in gross and calculated perjury.... [and] he has given material false testimony under oath." The district court's finding satisfies the Supreme Court's mandate in United States v. Dunnigan, 113 S.Ct. 1111, 1117 (1993), that the court must make independent findings under the perjury definition under 18 U.S.C. Sec. 1621.
 
 
 22
 Almanza next contends that the district court erroneously denied him a two-point downward departure for acceptance of responsibility under U.S.S.G. Sec. 3E1.1 because he did not deny his involvement and his testimony was mostly consistent with the Government's theory of the case. We review the district court's determination whether Almanza has accepted responsibility for clear error. United States v. Williams, 989 F.2d 1061, 1074 (9th Cir.1993). We conclude that the court did not clearly err.
 
 
 23
 Almanza did not "clearly demonstrate[ ] acceptance of responsibility for his offense." U.S.S.G. Sec. 3E1.1(a). Instead, he put the Government to its burden of proof at trial by denying the essential factual elements of guilt. See id., comment. (n. 2). Almanza's acceptance of responsibility was, at best, a limited acceptance. He admitted some involvement, but not to the level established by the Government. The district court correctly found this insufficient to qualify for the reduction. See United States v. Arias-Villanueva, 998 F.2d 1491, 1513 (9th Cir.), cert. denied, 114 S.Ct. 359 (1993).
 
 
 24
 Almanza's final contention is that Agent Ramirez' insistence on buying cocaine base as opposed to cocaine powder and her insistence on larger purchases is tantamount to sentencing entrapment. He contends that he should only be held accountable for his first drug transaction, one-half ounce, and that it should be treated as cocaine powder.
 
 
 25
 "Sentencing entrapment or 'sentence factor manipulation' occurs when 'a defendant, although predisposed to commit a minor or lesser offense, is entrapped in committing a greater offense subject to greater punishment.' " United States v. Staufer, 38 F.3d 1103, 1106 (9th Cir.1994) (citation omitted). We have relied on analysis similar to that done under U.S.S.G. Sec. 2D1.1 Application Note 12 (drugs under negotiation) and Application Note 17 (reverse sting) to determine whether a defendant was predisposed to engage in a drug transaction. See United States v. Naranjo, 52 F.3d 245, 250 (9th Cir.1995). In making his sentencing entrapment claim, Almanza bears the burden of demonstrating both lack of intent and lack of capability to produce the quantity of drugs at issue. Id. at n. 13.
 
 
 26
 The district court acknowledged that sentencing entrapment was troublesome, but found that in this case, entrapment did not exist. The court noted that this case involved a legitimate law enforcement effort to get to the "big dealer." We agree. As noted above, we have already determined that Almanza was properly held accountable for the drugs in negotiation because he had the intent and capability of producing two and one-half pounds of cocaine base. This case does not involve a reverse sting operation or "unusually favorable financial terms" offered by the Government. Id. at 251. Under the circumstances of this case, we conclude that Almanza was predisposed to engage in the various drug transactions with Ramirez. Therefore, the district court properly found that Almanza was not entrapped.
 
 
 27
 AFFIRMED in part, REMANDED in part.
 
 
 
 *
 The panel unanimously finds this case, No. 94-10241, suitable for decision without oral argument. Fed.R.App.P. 34(a) and 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3